**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Vasco Lee JOYNER, Defendant-Appellant.**

No. 72-3538.

United States Court of Appeals, Fifth Circuit.

May 23, 1974.

,William F. Beemer, Orlando, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Robert A. Leventhal, Harrison T. Slaughter, Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellee.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Vasco Lee Joyner was convicted under two counts of a four count indictment for conspiracy to violate Title 18, U.S.C. Sec. 2115 burglary of a post office, Title 18, U.S.C. Section 371, (Count One) and for violation of Title 18, U.S.C. Sections 2 and 641, theft of government property, consisting of postal stamps, savings stamps and money, valued at more than $100, or aiding and abetting the same, (Count Four). We are urged to reverse his conviction upon grounds of (1) violation of Title 28, U.S.C. Sec. 1861, in the composition of the grand jury which indicted him, (2) denial of his Sixth Amendment right to a speedy trial, (3) denial of his Sixth Amendment right to subpoena witnesses at government expense, (4) improper introduction at his trial of prejudicial evidence, and (5) improper jury instructions contained in the trial court's charge. We find no merit in the assertions of error and affirm the conviction.

Joyner was indicted with Donald Chapman and Richard Scott on September 10, 1970, by a Middle District of Florida grand jury sitting in Orlando, Florida. Arraignment was set for October 7, 1970, but was cancelled and never rescheduled. This indictment was ultimately dismissed on February 19, 1971, a superseding indictment for the same offense having been returned by another Middle District of Florida grand jury at Tampa, Florida on November 18, 1970. The charges in the two indictments were identical except for a change in the name and location of the post office charged to have been burglarized.

This appeal is from Joyner's conviction under the Tampa indictment. On February 2, 1971, Joyner entered a plea of not guilty to all charges, and on February 10, 1971, moved to dismiss the indictment because of denial of his right to speedy trial, violation of Title 28, U. S.C. Sec. 1861, in the composition of the grand jury and violation of his right against double jeopardy.[1] The motion to dismiss was denied and trial for all three defendants was set for March 8, 1971. The government was unable to arrange for the presence of the defendant Richard Scott on March 8 and the trial date was reset for June 22, 1971. On that date after the jury was impaneled and the trial was about to commence, it was brought to the court's attention that the defendants on trial while chained and handcuffed had been led into the courtroom in the jury's presence. A mistrial was granted at the request of defendants Scott and Chapman and over the objection of Joyner, who wished trial to commence at that time. On September 15, 1971, Joyner again moved to dismiss based upon a denial of his right to speedy trial, which was denied. Joyner's trial was set for November 1971, jointly with Scott and Chapman, but illness prevented his appearance. Scott and Chapman were tried as scheduled after Joyner's case was severed. Following several additional settings and continuances due to Joyner's illness, he was brought to trial alone in November, 1972. Conviction and this appeal followed. Joyner was

---

1. Additional pre-trial motions, for discovery, bill of particulars and the like, not pertinent to this discussion, were filed at the same time.

acquitted as to Count Two, a substantive charge of burglary of the Fern Park, Florida, post office, Title 18 U.S.C. Sec. 2115 and as to Count Three, which charged damage to government property. Title 18 U.S.C. Sec. 1361.

## THE TAMPA GRAND JURY AND TITLE 28 U.S.C. SEC. 1861

■ As noted Joyner was originally indicted by a Middle District grand jury sitting in Orlando. That indictment was dismissed after a superseding indictment charging the same offense, but at a different post office, was handed down by a grand jury empanelled and sitting at Tampa in the same district. Joyner argues that the Tampa indictment was invalid because obtained in violation of Title 28, U.S.C. Sec. 1861, and that his case should be reversed with instructions to dismiss that Indictment. Title 28, U.S.C. Sec. 1861 provides:

> "It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes."

Joyner's theory is that the court convened, for purposes of Sec. 1861, in Orlando, where the trial took place, therefore the indictment coming from the Tampa Division grand jury was defective because that grand jury was not selected from a cross section of Orlando or the Orlando Division of the district. The several divisions of the Middle District of Florida exist under the Local Rules of that district, not under an Act of Congress. Accepting *arguendo* the proposition that "division" in Sec. 1861 includes both the statutory and non-statutory types, we are still unpersuaded by Joyner's argument. Though perhaps supported by a narrow and literal reading of the statute this interpretation flies in the face of overwhelming evidence to the contrary.

Judicial interpretation of rules and statutes is consistently used to lend flexibility to the prosecution of criminal acts. Former Title 28, U.S.C. Sec. 114 required that "prosecutions" be had in the division in which the offense was committed, but the term "prosecution" was held not to include the bringing of the indictment. Salinger v. Loisel, 1923, 265 U.S. 224, 44 S.Ct. 519, 68 L.Ed. 989. In 1966 F.R.Crim.P. Rule 18 was amended to delete the requirement that trial be held in the division in which the crime was committed. Yet appellant argues that Congress intended to limit such flexibility by requiring that a grand jury be selected from the same community from which the petit jury trying the case was selected.

Nothing in the legislative history of Title 28, U.S.C. Sec. 1861 suggests such an intent. See H.R.Rep. 1076, 90th Cong., 2d Sess., 1968; 1968 U.S.Code Cong. and Admin.News, p. 1792. The emphasis there is clearly on guaranteeing randomness of selection from a cross section of the community, and we find no implication that significance should be attached to whatever community is involved. There is no mention of a distinction between grand and petit juries, nor a desire to draw each from the *same* community. In fact, the entire thrust of the bill which became P.L. 90–274, Title 28, U.S.C. Sec. 1861, is directed toward the procedures for guaranteeing fairness in jury selection, which has nothing to do with requiring that all juries be taken from the same community.

Under Rule 1(B) of the Rules of the District Court of the United States for the Middle District of Florida it is provided that "an indictment procured in any Division of the District shall be valid, regardless of where in the District the offense was committed." Local Rule 1(B) was adopted April 16, 1968 (effective May 1, 1968), but was the successor to similar local rule provisions going back to the district's creation from the Southern District by Pub.L. 87–562, 76 Stat. 247, and prior thereto for many years in the Southern District. Pub.L. 90–274's amendment to Title 28, U.S.C. Sec. 1861 became effective 270 days aft-

er the date of enactment (March 27, 1968), approximately December 22, 1968, yet the legislative history contains not the slightest indication of an intent to overrule this or any similar local rule. It seems doubtful actually, that the Middle District of Florida district judges would have re-adopted their long-standing rule on April 16, 1968 if they considered it likely to be invalidated by the Jury Selection and Service Act, then long contemplated and widely discussed and enacted less than three weeks earlier, March 27.

No cases are cited by Joyner in support of his interpretation, and we are not aware of any that deal specifically with this issue. But this court has had occasion to deal with similar issues which have arisen in the past. In United States v. Grayson, 5 Cir. 1969, 416 F.2d 1073, the defendant was indicted in a statutory division other than that in which the offense had been committed. He argued that the indictment was defective as not having been procured by a grand jury from the division in which the crime occurred.

"Predictably this argument does not find support in the decided cases, in view of the widely differing functions of grand and petit juries. The right to be tried before a jury from the vicinage is not impinged upon in the slightest by a finding of probable cause by an otherwise duly and legally constituted grand jury in another division of the same judicial district."

United States v. Grayson, supra, 416 F. 2d at 1076. We reaffirm our belief in that principle and do not find that Congress intended to depart from it in amending Section 1861 by the passage of Pub.L. 90–274.

## RIGHT TO SPEEDY TRIAL

Joyner further argues that government caused delay prior to his actually being tried amounted to a deprivation of his right to a speedy trial under the Sixth Amendment and Rule 48(b), F.R. Crim.P.[2] In computing the length of the delay, we begin with the date the indictment was filed, so long as it was timely with respect to the applicable statute of limitations, United States v. Grayson, supra, 416 F.2d at 1076–1077. Inasmuch as the Orlando indictment was dismissed without appellant ever having been called upon to plead to it, the critical time period commences with the return of the Tampa indictment, November 18, 1970.[3] The government, because of its failure to arrange for the presence of all three defendants, must be held responsible for the March, 1971 postponement of trial. The June, 1971 postponement is likewise chargeable to the government for exposing the shackled defendants to the view of the empanelled jury, precipitating a mistrial. The government was prepared to try Joyner in November, 1971 together with Scott and Chapman but for his poor health. All later continuances were likewise because of Joyner's illness. The right to speedy trial then is to be tested for the period of about one year elapsing between the return of the indictment on November 18, 1970 and the trial of Scott and Chapman which commenced at Orlando on November 15, 1971.

That no absolute time period can be used to determine violation vel non of the right to a speedy trial was settled by Mr. Justice Powell's definitive opinion for the Supreme Court in Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. In *Barker* the Court held that such a determination must be made on a case by case basis with focus upon four factors listed as (1) length of delay, (2) the reason for delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defend-

2. "If there is unnecessary delay in . . . bringing a defendant to trial, the court may dismiss the indictment, information or complaint".

3. During all periods pertinent to our inquiry Joyner was confined under sentences received in unrelated proceedings, so that no loss of liberty was occasioned by any delay involved.

ant's defense. The delay below of a year was not unusual, and certainly was not inordinate under the circumstances. Contributing significantly to the delay was a lack of foresight by the United State's Attorney's office in failing to have issued timely Writs of Habeas Corpus *ad prosequendum* on one occasion, and the thoughtlessness of the United States Marshals in exposing the shackled defendants to the jury's view on the other occasion. Joyner unquestionably as serted his right to speedy trial by his motion to dismiss filed September 15, 1971. But an opportunity for trial, abortive as to Joyner because of his illness, was provided November 15, two months later. The unfortunate but clearly inadvertent and unintentional (from the government's standpoint) chain of events causing delay did not amount in our judgment to the deprivation of appellant's right to speedy trial unless there was a showing of prejudice to Joyner's defense. Joyner urges that such prejudice is evident from the faded memory at trial of defense witness Louis Moore, and from the fact that the government secured additional evidence in aid of conviction *after* the June 22, 1971 declaration of mistrial.

██ Enhancement of the government's case during pre-trial delay is not relevant to the question of prejudice to the defendant's case by that delay, as declared by this court in United States v. Rosson, 5 Cir. 1971, 441 F.2d 242. Speedy trial is to be afforded in order to prevent impairment of the defendant's ability to defend himself. Its purpose is not to limit the ongoing accumulation of evidence by the prosecution.

██ Fading memory of witnesses, along with death, disappearance and defection of witnesses and loss of evidence are all recognized causes of prejudice that may develop during unnecessary pre-trial delay. See, e. g., Smith v. Hooey, 1969, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607. But in this instance we do not discern that the witness Moore experienced an impairment of memory because of the delay. The question is

largely speculative, because the impairment must be measured as of the time that Joyner would have been tried but for his illness, November, 1971. That was only a few months after the government caused delays, and there is no way to judge the quality of Moore's memory at that time. We know only how much he could remember in June of 1971 when interviewed by a postal inspector and at the time of actual trial in November of 1972. Appellant points to certain specific instances in Moore's trial testimony indicative of a lack of memory, but the issue actually is whether any impaired memory on his part was caused by the government's delay. On this point, government counsel asked Moore on cross-examination why his memory was *better* at the time of trial than when he had been interviewed by the postal inspector more than a year earlier in June, 1971. The response, interestingly enough, was that his memory had been "jogged" by the defendant Joyner. We think that the delay was more likely beneficial than prejudicial to Joyner's case. At any rate, prejudice to his defense is not demonstrated.

### DISCRETIONARY MATTERS

Appellant also seeks review of three procedural decisions of the trial court, each of which was within a discretionary setting, subject to correction on appeal only for abuse of such discretion.

██ First, Joyner attacks the denial of his request to subpoena at government expense a witness, who it was alleged, would have been able to impeach the testimony and destroy the credibility of the government's key witness, Leroy Johnson, a co-conspirator with Joyner. The right of a criminal defendant to call witnesses at government expense is declared by the Sixth Amendment to the United States Constitution and implemented by Rule 17, F.R.Crim.P. The right is by no means absolute. We have held that trial courts exercise broad discretion in this area, but that if a defendant alleges facts to be within the witness' knowledge which, if true, would be

relevant to an issue in the case, then his request must be granted. Welsh v. United States, 5 Cir. 1968, 404 F.2d 414, 417. Joyner's witness, according to the affidavit filed in support of the request for subpoena, would have testified that Johnson had a reputation for lying and untrustworthiness. However, neither the affidavit nor the discussion at the time the subpoena request was denied reveals the origin of this reputation or the locale in which it existed. Assuming without deciding that reputation witnesses come under the rule, the impeachment of a witness by impugning his reputation for truth and veracity must relate to the community in which he lives. Wharton's Criminal Evidence, Section 471; (13th ed.) Wigmore on Evidence, Section 1615. With no indication that the impeaching witness had such knowledge, it was well within the trial judge's discretion to deny the request to subpoena the witness at government expense.

Joyner alleges abuse of discretion in the admission into evidence of the lower portion of a social security card bearing Joyner's name. Initially, in April of 1971, an order was entered requiring disclosure by the government of all evidence it intended to introduce at trial, pursuant to a F.R.Crim.P. Rule 16 motion by the defendant. The social security card was not disclosed to Joyner's counsel until the day it was to be introduced, the government attorney trying the case stating that that was the first time he became aware of its existence. An F.B.I. agent had confiscated the card along with other materials at the time of Joyner's arrest, but no report of it was ever sent to postal authorities or to the United States Attorney's office. Its existence came to the prosecuting attorney's knowledge during his questioning of the witness prior to calling him as a witness. Rule 16(g), F.R. Crim.P., deals with the continuing duty to disclose newly discovered evidence under a prior order and provides that in the event of a violation of such duty the trial court may permit discovery, grant a continuance, prohibit introduction of the evidence, or enter whatever order it deems just under the circumstances. That discretion was exercised to permit use of the evidence by the United States in this instance, and prejudice to the defendant is not shown to have resulted. Abuse of the court's discretion is not made out in this particular.

It is urged lastly that reversal is compelled because of the trial court's response to a question from the jury during their deliberation concerning conversion of government property. The jury specifically inquired whether the acceptance of money from one who steals it amounts to stealing it, and the court informed them that it did not, unless the acceptance aided and abetted the crime charged. Appellant argues that it was error to explain in that fashion, and that the court's response should have been confined to an unqualified "no". The comment is hardly a misstatement of the law, and we can see no prejudice which might have attended it. Under the circumstances the answer given was not an abuse of discretion.[4] See, e. g., United States v. Gordon, 8 Cir. 1972, 455 F.2d 398.

## CONCLUSION

Prejudicial error is not shown to have occurred in any of the particulars relied upon by Joyner on this appeal. The judgment below was right.

Affirmed.

4. We note additionally that Count Four, the substantive charge of theft under Sec. 2115, also charged violation of Title 18, U.S.C. Sec. 2, the "aider and abettor" statute.