**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Harold Isadore ZWEIG and Irving Berlin, Defendants-Appellants.**

**No. 76–3692.**

United States Court of Appeals, Fifth Circuit.

Nov. 11, 1977.

Rehearing Denied Dec. 14, 1977.

Melvyn Carson Bruder (Court-Appointed), Dallas, Tex., for Irving Berlin.

Jack N. Price (Court-Appointed), Austin, Tex., for Harold Isadore Zweig.

Kenneth J. Mighell, U. S. Atty., Stafford Hutchinson, Robert C. Prather, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before THORNBERRY, Circuit Judge, SKELTON, Senior Judge *, and HILL, Circuit Judge.

THORNBERRY, Circuit Judge:

Defendants-appellants were convicted in a trial before the court of two counts of mail fraud. 18 U.S.C. § 1341, growing out of their operation of International Aidco, a firm allegedly intended to aid clients in the processing of patents.[1] Appellants pur-chased the company from its creators about a year and a half after it began operation.[2] The government charged that they there-after gutted the company and did not per-form the promised services for the clients who had contracted for patent develop-ment. Appellants counter that they took over a failing company that went under despite their efforts.[3] They claim that the government failed to introduce sufficient evidence to demonstrate their intent to de-fraud, conversion of client monies, or fraud-ulent representations. We find this claim unpersuasive and affirm appellants' convic-tions.

As a starting point we note that appellants failed to ask for a fact finding pursuant to Fed.Rule Crim.P. 23(c). Absent that fact finding we assume that the trial court found in the government's favor with respect to every alleged statement relied upon by the government. *See Lustiger v. United States*, 386 F.2d 132 (9 Cir. 1967). Further, the standard of review in the case requires the court to view the evidence, together with the inferences properly de-ducible therefrom, in the light most favor-able to the government. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). The resolution of intent is a question for the trier of fact and should not be lightly overturned. *Silverman v. United States*, 213 F.2d 405 (5 Cir. 1954).

Appellants were convicted on counts 7 and 13, growing out of transactions in-volving O. M. Whitecotten and Josephine Stafford.[4] The government produced the

---

* Senior Judge of the United States Court of Claims, sitting by designation.

1. Appellants were also convicted of conspiracy to commit mail fraud. They made no separate arguments that their conspiracy conviction should be reversed. For the reasons that we affirm their substantive convictions we also affirm the conspiracy count.

2. Aidco was created by the Bekland Corpora-tion in December 1971. Mr. Berlin was at one time executive vice-president of Aidco. He left that company after a short term when he and others decided to purchase it from its then owners. Mr. Zweig was also a purchaser. Berlin, Zweig and others chartered Internation-al Aidco as a Texas Corporation to purchase Aidco.

3. In July, 1972 after completing the purchase in May, appellants sued Bekland claiming that there were fraudulent representations in the original sale. The case was settled and the entire consideration paid for the company re-turned.

4. Appellants were originally charged in a thir-teen count indictment. Two counts were dropped by the government. Appellants were acquitted on nine counts.

following testimony concerning the Whitecotten contract. Mr. Whitecotten went to the Dallas Holiday Inn Office in August, 1972 and was sent to another Dallas office to sign a contract. He paid $100 down and paid $60 per month until the middle of December, 1972. Whitecotten received a total of three letters from International Aidco. He talked to Mr. Berlin on the telephone and was told that the company was "working on it." No document disclosure was ever filed on Mr. Whitecotten's patent. He received no patent search, no artist sketch and no document disclosure.

Mrs. Stafford lived in Hilo, Hawaii. Mrs. Stafford received a letter that a patent search was done. The search was done by National Research Systems, Inc. and not by an attorney or agent registered with the United States Patent Office. Mrs. Stafford received another letter saying that correspondence has been delayed due to a move into new offices, but that a prospectus was being prepared. She never received the prospectus. Mrs. Stafford also received correspondence from International Aidco that stated that the company dealt directly with the presidents and boards of directors on the client's ideas.

Mr. Berlin sent Mrs. Stafford two letters. One stated that an Evaluation Board had concluded that her invention was technically feasible, had a strong product market and that consumer acceptance was quite good for this product market. The second letter stated that a patent search was complete. It advised her that her product would be presented to manufacturers and that she would be kept informed of the progress. Mr. Berlin also assured Mr. Whitecotten that his invention was "still on the drawing board" but that he would soon receive an artist's illustration. It never came.

Mr. Zweig's secretary testified that she had very little work to do at International Aidco. She testified that at one point she was told to go into another office and telephone the company to "make it look busy." This testimony was uncontradicted. She testified that although there were several employees in the firm only Miss Howell "seemed busy." She never saw machines or facilities to test equipment or to create product packaging designs. Assuming that some of her testimony was rebutted by the fact that she was not constantly present in the purported production offices, the assertion that she was told to make the company "look busy" still stands as does her later testimony that Mr. Zweig refused repeatedly to talk to clients or investors. Miss Howell testified that the client's forms were serviced through the use of standard forms and that she maintained them through the use of a check list. She also stated that although she prepared some eighty document disclosures, she was told by Mr. Berlin that there was no money to file them. Finally she testified that she had lied to a client at the insistence of Mr. Berlin. No Evaluation Board ever existed, although the letters to clients contained reference to such a board. The patent researchers who were originally employed were not registered with the Patent Office and quit because they were not paid. The manufacturers who were contacted were chosen by unskilled personnel who looked up the names in the telephone book.

Defendants-appellants' position, restated, is that they cannot be convicted on the Stafford and Whitecotten contracts because these two contracts were two of the last entered into and were not fully performed due to a failing business, that the government has not established any unitary fraudulent scheme and that their good faith attempts to fulfill the contracts should absolve them.

■ Mr. Berlin was familiar with patents and the requirements for marketing them. Mr. Zweig is an attorney. Both defendants knew shortly after their acquisition of the company that it was in serious financial trouble. Despite this fact they continued to represent to their customers that the services would be performed. *United States v. Sampson*, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). It is a well-established principle of mail fraud that the use of the mails after the money is obtained may be

for the purpose of executing the fraud. *United States v. Ashdown*, 509 F.2d 793, 799 (5 Cir. 1975). Additionally appellants represented that services, such as the contacting of manufacturing concerns, would be performed when they must have known that the company could not hope to perform the services in the promised or any manner. Employee testimony established substantial evidence that they evaded client inquiries. Appellants themselves admitted that they knew of the serious financial deficiencies. To continue representations that all was well in such circumstances amounts to intent. The court was thoroughly justified in inferring an intent to defraud on these facts.

We AFFIRM.