UNITED STATES of America,
Plaintiff-Appellee,

v.

Danny K. LAMBERT and Donald
Basden, Defendants-Appellants.

No. 76–4404.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1978.

James F. Russell, Memphis, Tenn. (court-appointed), for Lambert.

Duncan L. Lott, Booneville, Miss., for defendants-appellants.

H. M. Ray, U. S. Atty., Sam D. Knowlton, Alfred E. Moreton, III, Asst. U. S. Attys., Oxford, Miss., for plaintiff-appellee.

Before BROWN, Chief Judge, GEWIN and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

Danny K. Lambert, Donald Basden, and James Lee Dunn were convicted by a jury of conspiring to transport and to cause to be transported in interstate commerce motor vehicles that they knew were stolen and of conspiring to conceal, store, sell and dispose of the motor vehicles, in violation of the Dyer Act, 18 U.S.C. §§ 2312, 2313 (1976). 18 U.S.C. § 371 (1976). In addition to the conspiracy count, Lambert was convicted on eight counts of receiving and selling stolen vehicles moving in interstate commerce, 18 U.S.C. §§ 2, 2313 (1976), and Basden was convicted on ten counts of aiding and abetting Dunn in committing substantive Dyer Act violations, 18 U.S.C. §§ 2, 2312, 2313 (1976).[1] In this appeal, both Lambert and Basden assert that the evidence was insufficient to support the jury's verdicts. Lambert also makes numerous allegations of trial error. We find the verdicts are supported by the evidence and the allegations of trial error are without merit; therefore, we affirm their convictions.

The evidence in this case, when viewed in the light most favorable to the Government, *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), with all reasonable inferences and credibility choices resolved in support of the jury verdicts, *United States v. Zweig,* 562 F.2d 962, 963 (5th Cir. 1977), shows a complex series of transactions among the defendants involving stolen automobiles. Danny K. Lambert owned and managed an automobile dealership in Iuka, Mississippi. In the course of his business, he would purchase or trade for recent model used automobiles. Twenty-one or twenty-two of the used automobiles he received for sale had been obtained either from Basden or Dunn or from both of them. Eight of these automobiles were the bases of the indictment in this case.

During a six month period, October, 1974, to March, 1975, Lambert received the eight automobiles within three days to three weeks from the dates on which they were stolen from their owners in Illinois and Alabama. In exchange for the automobiles, Lambert issued checks to Dunn or Basden and gave them bills of sale purporting to transfer to them title of older model used automobiles on the dealership lot. *E. g.,* Record, vol. 5, at 1126–29. Documentary evidence indicated that at least some of the older automobiles may have been sold to other individuals. *Id.* at 1099–1104, 1107–08.

The vehicle identification numbers on the stolen automobiles had been altered, *e. g., id.* vol. 2, at 195–202, and some of the vehicles had damaged or replaced door locks, *e. g., id.* vol. 3, at 397, 449–50. There were numerous discrepancies in the title documents: some counterfeit documents were supplied to Lambert by Basden and Dunn, some were falsely notarized in his office, and some were created after the automobiles were in his possession. *E. g., id.* vol. 4, at 889–91, 895–96, 922. Lambert's business records relating to these automobiles revealed numerous inconsistencies: some bills of sale he issued did not match his other records, for example. *E. g., id.* vol. 3, at 544–45; *id.* vol. 5, at 1123–26. When selling to innocent purchasers, Lambert gave false explanations for the damaged locks and as to the source of the automobiles. *E. g., id.* vol. 3, at 437–38, 451.

---

1. Dunn was convicted on the same counts as Basden. He was a party to this appeal until we granted his motion to dismiss on March 22, 1977.

Lambert took the stand in his own defense and in his testimony stated that he had cooperated with the authorities during the investigation. *Id.* vol. 4, 823–24. However, it was developed through the Government's cross examination, its case-in-chief, and on rebuttal, that Lambert, when asked during the FBI investigation for a list of the automobiles received from Basden and Dunn, had furnished a list of only seven vehicles. Only two stolen automobiles were on the list, the two that he already knew had been recovered by the authorities as stolen. *Id.* vol. 5, at 964–69; *id.* vol. 2, at 334. Also, when the FBI requested his records, Lambert stated that eighty or ninety percent of them had been destroyed in a fire. During the trial, however, the records "reappeared." *Id.* vol. 4, at 854–55; *id.* vol. 5, at 1012–13, 1071–76, 1097–99.

## I

Lambert claims that the evidence against him was not sufficient to submit his case to the jury on either the conspiracy or substantive counts because he had introduced evidence inconsistent with guilty knowledge and because the automobiles allegedly had ceased to move in interstate commerce prior to his purchases. Basden asserts that the jury verdicts against him are against the overwhelming weight of the evidence as to his innocence. His defense was that he was acting merely upon the orders of his employer, Billy Garrett, of Corinth, Mississippi, in delivering the automobiles to Lambert and did not know that the vehicles were stolen.

■■ As to whether the stolen property was in interstate commerce at the time of its receipt by Lambert from Basden, we note that a "transaction [is] not shorn of its interstate character [because another] was in possession of the car for a short period between the time it reached [its ultimate destination] and the time it was delivered to the appellant." *United States v. Hall*, 455 F.2d 492, 493 (5th Cir.), *cert. denied*, 406 U.S. 927, 92 S.Ct. 1801, 32 L.Ed.2d 129 (1972). We have held that the presence of a stolen vehicle in a state for more than a month is not conclusive on the issue whether the interstate transportation has ended. *Powell v. United States*, 410 F.2d 710, 713 (5th Cir. 1969). Here, as short a time as three days had elapsed between the theft and Lambert's receipt of an automobile from Basden; the longest lag was only three weeks. This was sufficient to establish a prima facie case under the Dyer Act. *See United States v. Robertson*, 417 F.2d 873, 875 (5th Cir. 1969). Whether the stolen property is in interstate commerce is a question of fact for the jury, *see United States v. Baker*, 452 F.2d 21, 24 (5th Cir. 1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1195, 31 L.Ed.2d 248 (1972), and there was sufficient evidence before this jury for it to conclude that the vehicles had not yet come to rest within Mississippi.

■ Possession of a stolen automobile shortly after its theft "justifies the inference that the possession is guilty possession, and, though only *prima facie* evidence of guilt, may be of controlling weight, unless explained by the circumstances or accounted for in some way consistent with innocence." *United States v. Smith*, 502 F.2d 1250, 1254 (5th Cir. 1974) (quoting *Wilson v. United States*, 162 U.S. 613, 16 S.Ct. 895, 898, 40 L.Ed. 1090 (1896)); *see United States v. Casey*, 540 F.2d 811, 816 (5th Cir. 1976). Lambert attempted to rebut this inference by introducing "washout" evidence, showing that he had paid a fair and adequate consideration for the automobiles and that their resales resulted in nominal profits. Basden did not testify. Dunn did take the stand, however, and asserted that he and Basden were acting under the orders of their employer, Billy Garrett, who was deceased at the time of the trial.

■ That Lambert and Basden presented an explanation for their possession of the automobiles "does not necessarily overcome [the] permissible inference of guilty knowledge because the trier of fact is entitled to judge the credibility of the defendant's explanation and assign to the evidence whatever weight he believes it is entitled to." *United States v. Spivey*, 508 F.2d 1061, 1063 (5th Cir. 1975). The jury is not bound to

accept a defendant's explanation even "if it stood uncontradicted by the government." *Williams v. United States*, 394 F.2d 821, 822 (5th Cir.), *cert. denied*, 393 U.S. 890, 89 S.Ct. 211, 21 L.Ed.2d 169 (1968).

▮ The evidence presented against Lambert by the Government showed more than mere possession of recently stolen property. The eight transactions with Dunn and Basden were connected so closely in time and method as practically to form one complete transaction, which tended to show the criminal knowledge. *United States v. Cerullo*, 435 F.2d 142, 143 (5th Cir. 1970). The title documents on the automobiles were in disarray, *see United States v. Fairchild*, 505 F.2d 1378, 1381 (5th Cir. 1975), and Lambert did not explain the discrepancies in the bills of sale, *see Spivey*, 508 F.2d at 1063. Further, there was the physical evidence on the automobiles: the damaged locks and the altered vehicle identification numbers. *See id.* As in *Spivey*, we conclude that "[v]iewed in the light most favorable to the government the evidence was sufficient to establish appellant's guilt." *Id.*

As for Basden's contention that he did not have the requisite guilty knowledge, the jury had before it, in addition to the checks and bills of sale made out to him, the testimony of Lanell Brewer, the bookkeeper of

Lambert's automobile dealership. Ms. Brewer testified that Lambert's dealings were with Basden and Dunn, not Garrett. There was sufficient evidence to support the jury's verdicts against Basden.[2] *Id.*

## II

▮ The other allegations of error raised by Lambert are related to the admission of evidence,[3] the striking of an unproved overt act from the conspiracy count, and the scope of his cross-examination by the Government. As we establish below, these claims are without merit; therefore, Lambert's convictions are affirmed.

### A. *The Admission of Evidence*

▮ Lambert contends that the district court erred in admitting the vehicle identification number (VIN) plates that were removed from the stolen automobiles. He bases this contention on two grounds: first, in the course of the investigation by the law enforcement authorities, the physical condition and appearance of the plates had been altered substantially from their condition and appearance at the time of the alleged Dyer Act violations; second, the plates had not been produced by the Government for examination by the defense before the trial.[4]

---

2. Basden asserts that the acts set out in the conspiracy count of the indictment are not illegal or criminal in themselves. As we have stated,

> While each of these acts considered alone may have been insufficient to establish [the defendant's] guilt, considered cumulatively they were adequate to justify the jury verdict on the conspiracy count. Acts which are not per se unlawful lose that character when they become constituent elements of a criminal conspiracy.

*United States v. Muller*, 550 F.2d 1375, 1380 (5th Cir. 1977), *cert. denied*, 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

3. One of Lambert's allegations, that it was error to admit testimony disclosing that the automobile dealership's notary could not identify the person signing a certificate of title, is clearly without merit. No objection was made at trial to this testimony. Further, the defense offered testimony that automobile dealers routinely accept certificates of title signed in

blank. The admission of this testimony certainly does not rise to the level of plain error, which is the standard required for review of contentions not brought to the attention of the trial court. Fed.R.Crim.P. 52(b).

4. Fed.R.Crim.P. 16 controls discovery and inspection. It provides in part as follows:

> (a) *Disclosure of Evidence by the Government.*
> (1) *Information Subject to Disclosure.*
> . . .
> (C) *Documents and Tangible Objects.* Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of his defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

The VIN plates on the stolen cars were covered with dynatape imprinted with falsified vehicle identification numbers. During the investigation of the stolen cars, the dashboards were dismantled and the falsified VIN plates were removed and dissected to ascertain the true numbers. Lambert claims that the trial court should have excluded the dissected plates under Fed.R. Evid. 403, which states in part that "evidence may be excluded if its probative value is substantially outweighed by the danger of the unfair prejudice, confusion of the issues, or misleading the jury." His argument is that the altered condition of the plates did not give the jury an accurate portrayal of the plates' appearances when he purchased and sold the stolen automobiles.

We think the district judge did not abuse his discretion in admitting the altered VIN plates. The officers who removed the plates were thoroughly cross-examined about the condition and appearance of the plates at the time they were removed. Record, vol. 2, 237–42, 244–45, 270–76. On one occasion, Lambert and one of his attorneys actually were present when state officers removed the VIN plate from one of the stolen automobiles. *Id.* at 271–72.

As for Lambert's second ground, he can hardly assert that he was unaware of the existence of the VIN plates. He was present when the VIN plate was removed from one of the automobiles, and the VIN plates were treated in a scientific report disclosed by the Government. The Government had notified the defense before the trial that the tangible evidence would be made available for inspection at a mutually convenient time. Rather than making prior arrangements or an appointment, Lambert's counsel went to the United States Attorney's office unannounced. The Government's counsel for this case was involved in another case at that time and could not meet with Lambert's counsel. A conference then was scheduled but later cancelled pending a hearing on a defense motion for a bill of particulars and broader discovery. The hearing was held on October 18, 1976, and the vehicle identification numbers were furnished to the defense on October 20, 1976. The defense made no further efforts to inspect the VIN plates prior to the trial, which began on November 8, 1976.

As we said in *United States v. O'Shea,* 450 F.2d 298, 300 (5th Cir. 1971), "Once the Government has made known that certain items of evidence are in its possession, its obligation to make such items available for inspection under a proper pretrial discovery and inspection order does not arise until defense counsel makes a request for inspection." The district judge below, in overruling the defense's objection to the introduction of the VIN plates, incorporated his findings into the record. He concluded that defense counsel's actions did not "represent a diligent effort to get these matters and have some inspection made of them or some investigation made of them." Record, vol. 2, at 252. We conclude that there was no violation of Fed.R.Crim.P. 16 in the admission of the VIN plates.

As an alternative to its objection to the introduction of the VIN plates, the defense requested a continuance so that the VIN plates could be inspected. The district judge granted a half-day continuance. Even were we to assume a violation of Fed.R.Crim.P. 16 by the Government, there was no abuse in the district court's exercise of its discretion in granting a continuance and admitting the evidence.[5]

---

5. Fed.R.Crim.P. 16(d)(2), which deals with the district court's regulation of discovery when there has been a failure to comply with a request, provides as follows:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with [Fed.R.Crim.P. 16], the court may order such party to permit the discovery or inspec-

tion, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances. The court may specify the time, place and manner of making the discovery and inspection and may prescribe such terms and conditions as are just.

■ Lambert also contends that a sack of automobile locks and ignition switches, introduced during the Government's cross-examination of Dunn, should not have been admitted since the Government had failed to produce them in accordance with rule 16. The record does not show when this evidence came into the possession of the Government or why it was not disclosed to the defense. The precise objection Lambert made at trial to its admission in evidence was that a proper predicate had not been laid, not that the Government had violated the discovery rule. Record, vol. 6, at 1347–50. As we said in *United States v. Hicks*, 524 F.2d 1001, 1004 (5th Cir. 1975), "The general rule for preserving an issue on appeal is that the objecting party must specify his grounds for objection. . . . The wisdom of that rule is borne out by this case. If the defendant had objected . . . at trial, the government could have put its grounds . . . on the record." *See United States v. Grene*, 455 F.2d 376 (5th Cir.), *cert. denied*, 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972).

In any event, the locks and switches were not offered during the Government's case in chief but were introduced on cross-examination to impeach Dunn's direct testimony that his house had never been searched. Record, vol. 6, at 1311, 1347–52. The locks and switches therefore "were outside the scope of the production order because they were introduced not as part of the Government's case-in-chief, but as impeachment evidence during cross-examination of defendant [Dunn]. . . . [T]here was neither noncompliance with the production order nor abuse of discretion in the court's ruling that these items were admissible." *United States v. Wells*, 525 F.2d 974, 976

(5th Cir. 1976). *See* Fed.R.Crim.P. 16(a)(1)(C), *quoted in* note 4 *supra*.

■ Lambert contends that the district judge erred in excluding documentary evidence of his purchases of used automobiles from sellers other than Basden and Dunn. Record, vol. 5, at 1010–11. He argues that these transactions were relevant because they were similar to his transactions with the codefendants and demonstrated the routine practice of the automobile dealership. *See* Fed.R.Evid. 402, 406. The trial court ruled that evidence of transactions with other sellers was not relevant. "[E]vidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant." *United States v. Dobbs*, 506 F.2d 445, 447 (5th Cir. 1975). A "District Court has wide discretion in determining relevance and materiality and its ruling should not be disturbed in the absence of an abuse of discretion." *United States v. Garr*, 461 F.2d 487, 489–90 (5th Cir.), *cert. denied*, 409 U.S. 880, 93 S.Ct. 170, 34 L.Ed.2d 135 (1972).

We note that the court below did permit Lambert to introduce testimony, documentary evidence, and Fed.R.Evid. 1006 summary exhibits relating to the "washout" sales on all automobiles received from Basden and Dunn, whether charged in the indictment or not. Record, vol. 5, at 1016–83. The jury had ample evidence before it to determine the routine business practices of the automobile dealership. Even assuming that the proffered evidence of transactions with other automobile sellers was relevant, we think it could have been excluded properly under Fed.R.Evid. 403.[6]

Lambert raises several allegations of trial court error in the determination of the sequence of the introduction of the evidence.[7] Our review of the record, which discloses

---

The district judge's action was clearly proper under this rule. *See United States v. Joyner*, 494 F.2d 501, 507 (5th Cir. 1974).

6. Fed.R.Evid. 403 states as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

7. The district court refused to permit the records of the subsequent trades of the stolen vehicles to be introduced by the defense through cross-examination of a Government witness. The witness, the automobile dealership's bookkeeper, had testified on direct examination concerning the purchasing of the automobiles by Lambert from Basden and Dunn. Documentary evidence as to these transactions was admitted through the bookkeeper. *E. g.*, Record, vol. 3, 531–34, 544–49. The district

proffers of voluminous documentary evidence, leads us to the conclusion that the district judge properly controlled the flow of the trial under Fed.R.Evid. 611.[8] *See United States v. Furr*, 528 F.2d 578 (5th Cir. 1976).

### B. *Striking the Overt Act*

██ The conspiracy count of the indictment contained a list of nineteen overt acts allegedly done in furtherance of the conspiracy. At the conclusion of the Government's case, Lambert moved to strike four of the alleged acts relating to checks given by him to Basden and Dunn on the ground that there had been no proof introduced as to them. Record, vol. 4, at 790–91. Neither the district judge nor counsel for either side was certain whether the four checks in question were among those introduced. *Id.* at 788–89. The judge deferred ruling on the motion at that time. *Id.* at 791. At the conclusion of all the evidence, the court again considered Lambert's motion. An examination of the exhibits revealed that all but one of the checks had been introduced by Lambert as part of his "washout" evidence. The fourth check had been marked for identification but had not been offered into evidence by the Government. *Id.*, vol. 6, at 1414–17. Basden and Lambert objected to the introduction of the fourth check at that stage of the trial, the Government withdrew its proffer, and the district judge struck overt act six, to which the check related, from the conspiracy count of the indictment. *Id.* at 1417.

Lambert cites no authority and refers to nothing in the record to demonstrate that the district court's disposition of this issue was erroneous or prejudicial to him. Any potential error was avoided by the district court's ultimate decision not to submit the overt act to the jury.

### C. *The Cross-Examination of Lambert*

██ Lambert took the stand to testify in his own defense. On direct examination, he stated that he knew Basden and Dunn only as automobile dealers from whom he had purchased twenty-one or twenty-two vehicles. Record, vol. 4, at 822. In preparing for the trial, Lambert had examined the records of those transactions. *Id.* at 829–30. Before completing the direct examination, the defense requested a recess to make copies of summaries of the purchases. After the copies had been made and furnished to the Government, Lambert's counsel decided not to introduce them through Lambert. *Id.* at 834–35. Instead, the summaries, which covered all the Lambert, Basden, and Dunn transactions, were introduced through a later defense witness.

To impeach Lambert's testimony that all his dealings with Basden and Dunn had been arms-length business transactions, the Government confronted him on cross-examination with two checks he had written to Dunn in May, 1975. *Id.*, vol. 5, at 948–54, 960–61. Lambert explained that one check was definitely for a particular car, but he

---

judge ruled that the records of the subsequent trades be introduced during the defense's case in chief, since they were "washout" evidence, the basis for the defense's argument that Lambert did not make an excessive profit on the stolen cars. *Id.* vol. 5, at 992 *et seq.*

The district judge made a similar ruling on a letter written by the automobile dealership's attorney. The Government called the Director of the Title Division of the Mississippi Motor Vehicle Comptroller's Office to explain the Mississippi titling procedure and to authenticate the applications for title submitted to him for the stolen cars. During cross examination Lambert attempted to introduce the letter, which was written to the witness after the first two automobiles were recovered as stolen and asserted that the vehicles had been purchased in good faith. *Id.* vol. 3, at 505–06. The court

ruled that the letter was a self-serving statement, inadmissible as a defense exhibit through cross-examination of the Government witness, but that it might be admissible during the defendant's case in chief. *Id.* at 508. The attorney who wrote the letter was called later as a witness by Lambert and was questioned about it, *id.* vol. 5, at 1166–71, but the letter itself was not offered at that time.

**8.** Fed.R.Evid. 611(a) provides as follows:

*Control by court.* The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

did not explain the other one. *Id.* at 953–54, 960–61. The Government then presented Lambert with the summaries furnished by him and asked if he could find the checks in those summaries. He could not. *Id.* at 955–58, 960.

Lambert claims that the use of the checks was improper cross-examination on two grounds: first, he had not mentioned the checks in his direct examination, and second, the Government had not furnished them to him during discovery. We find this contention meritless as to both grounds. The subject of his transactions with Basden and Dunn had been opened by Lambert's direct testimony, and the checks were introduced to impeach his testimony that all the transactions were valid business dealings. *See* Fed.R.Evid. 611(b). And, as we have stated above, see text following note 5 *supra,* impeachment evidence introduced during the cross-examination of the defendant is outside the scope of Fed.R.Crim.P. 16, *see United States v. Wells,* 525 F.2d 974, 976 (5th Cir. 1976), and therefore need not have been furnished during discovery.

### III

For the foregoing reasons, the convictions of Lambert and Basden are

AFFIRMED.