**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Albert LaCOSTE, a/k/a "Mickey" LaCoste, and Bernie Bill Bierman, Defendants-Appellants.**

No. 82–3747.

United States Court of Appeals, Fifth Circuit.

Dec. 9, 1983.

Rehearing and Rehearing En Banc Denied Jan. 5, 1984.

John DiGiulio, Baton Rouge, La. (Court-appointed), for LaCoste.

James A. McPherson, New Orleans, La., for Bierman.

Stanford O. Bardwell, Jr., U.S. Atty., Ian F. Hipwell, Asst. U.S. Atty., Baton Rouge, La., for plaintiff-appellee.

Before GARZA, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

Appellants/co-defendants LaCoste and Bierman appeal from convictions for violations of 18 U.S.C. §§ 371, 659 and 2. Appellants claim that four errors occurred in the trial court below, and that these errors justify reversal of this case. First, appellants contend that a defense witness' testimony was incorrectly excluded through assertion of the fifth amendment. At the very least, appellants urge that a private investigator's interview report of that witness should have been admitted into evidence or that the court should have delayed proceedings for a second time to enable the private investigator to testify personally. Second, they argue that the prosecutor should have been required to testify about his interview with the witness or stipulate as to what was said in the interview. Third, appellants contend that evidence should have been excluded because of the prosecutor's abuse of discovery. Finally, appellant Bierman argues that the court incorrectly denied his motion for a severance. We find that none of appellants' points of error justify reversal.

## FACTS

Appellants Bierman and LaCoste were indicted on January 28, 1982, along with Canatella and Toups for conspiring to steal two barges of soybeans. A second count charged the same individuals with the substantive crime of interstate theft of those barges and soybeans. In an earlier related case, involving the same facts, defendants Dottolo and Nelson pled guilty, the former to conspiracy, the latter to the substantive charge.

On March 17, 1982, Toups pled guilty to the conspiracy charge. Under plea bargaining arrangements, Dottolo, Nelson and Toups were required to testify truthfully in any subsequent trial on the merits. On September 8 through 10, 1982, Bierman, LaCoste and Canatella were tried. Canatella was acquitted on both counts; LaCoste was convicted on both and Bierman was acquitted on the conspiracy count, but convicted on the substantive charge.

According to Dottolo's testimony, after he had developed a plan to steal soybeans he met LaCoste and Hicks in Port Allen, Louisiana. Dottolo testified that at this meeting Hicks was uninterested in the scheme but told Dottolo that Bierman had been told of the plan and wanted to buy stolen soybeans. A week after that meeting Dottolo, Canatella and LaCoste met. Soon thereafter, Dottolo, Canatella, LaCoste and Bierman met in an airport to discuss the soybeans. Dottolo testified that at this meeting Bierman discussed arrangements for buying stolen beans. Dottolo, Canatella and Bierman met at Murphy's Seafood for further discussions. Dottolo testified that at that time Bierman suggested a place to unload the stolen beans. Several days before the theft Dottolo and LaCoste met Bierman's attorney at an airport and received $5,000 in front money. After the theft of the soybeans the U.S. Attorney (Conradi) interviewed Hicks, who claimed that he had never told Dottolo that Bierman wanted to buy stolen soybeans.

Appellant Bierman wanted Hicks to testify to this denial, but he refused and took the fifth. At trial, appellants requested that either the U.S. Attorney or the FBI agent, who had been present during part of the time Hicks was questioned, be required to take the stand. Although the trial judge never formally ruled on this request, he expressed substantial reservations about requiring the U.S. Attorney to take the stand. Appellant Bierman's attorney had previously sent a private investigator to Dallas to interview Hicks who was in a jail. Bierman then tried to introduce the private investigator's report into evidence. The report was excluded as hearsay. Bierman then called the private investigator to testify in person, but he did not arrive in time for the trial despite the fact that the court had delayed the proceedings.

## ISSUES

Defendant Bierman's best point of error concerns the Hicks testimony. First, appel-

lant argues that the court's cognizance of Hicks' assertion of the fifth amendment privilege was improper. Appellant argues that the fifth amendment privilege is unnecessary when, as was true in Hicks' case, the testimony sought from the witness is exculpatory. Appellant argues that since Hicks stated that he did not know the soybeans were to have been stolen and did not inform Bierman of such, the testimony sought did not give rise to a real and substantial risk of criminal liability and therefore Hicks' assertion of the fifth amendment privilege should have been denied. The lower court allowed an extensive examination of Hicks to determine whether he had sufficient grounds to claim a fifth amendment privilege. Record, vol. V, at 10–175–186. This court has noted that a witness may invoke the fifth amendment even " 'though no criminal charges are pending against him . . . . and even if the risk of prosecution is remote.' " *United States v. D'Apice,* 664 F.2d 75, 76 (5th Cir. 1981) (quoting *In re Corrugated Container Anti-Trust Litigation,* 620 F.2d 1086, 1091 (5th Cir.1980), *cert. denied, sub. nom Adams Extract Co. v. Franey & Hopkins,* 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981) (quoting *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1087 n. 5 (5th Cir. 1979)). This court has also noted that determining whether the fifth amendment has been improperly invoked is left to the informed discretion of the trial judge. *United States v. Sheikh,* 654 F.2d 1057, 1072 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); *United States v. Metz,* 608 F.2d 147, 156 (5th Cir. 1979), *cert. denied,* 449 U.S. 821, 101 S.Ct. 80, 66 L.Ed.2d 24 (1980).

■ The court's ruling on Hick's assertion of the fifth was correct. Hicks was an unindicted co-conspirator. Moreover, Dottolo's testimony alone implicated Hicks as an aider and abetter to the crimes. Finally, Hicks may have lied to the U.S. Attorney and thus could have been faced with admitting guilt or committing perjury. Under these circumstances the trial court's ruling was undoubtedly within its discretion.

Bierman's argument that the prosecutor should have stipulated to Hick's denial because he knew it was true presents misconduct approaching reversible error. Conradi, the prosecutor, had personally questioned Hicks and was present at the trial. Nevertheless, he would not stipulate, did not take the stand and objected to the introduction of the private investigator's report. His willful refusal to stipulate to the truth is reprehensible conduct. The courtroom is not a wrestling ring where the prosecutor battles the defense attorney by any means necessary to achieve victory. Prosecutors are officers of the court appointed to discover the truth and administer justice, not compile impressive conviction records.

■ Although the prosecutor's conduct regarding this matter was improper it does not constitute reversible error—in this case—because admission of Hicks' testimony is only cumulative. Bierman took the stand in his own defense. He stated that he never knew or was told that the soybeans he made a down payment on were stolen. LaCoste also testified that at the various meetings he attended no one, including Hicks, ever mentioned stolen soybeans. Dottolo testified that Hicks told him that Bierman had said that he was interested in buying stolen soybeans. In addition, Dottolo testified that he personally had an hour long meeting with Bierman, LaCoste and Canatella to discuss the theft and purchase of the beans. In six different places Dottolo's testimony makes it clear that at that meeting he identified the soybeans as stolen or hot beans. He also stated that Bierman responded to these representations by saying that such beans were bought fifty cents on the dollar. The jury believed Dottolo and rejected Bierman's and LaCoste's version of the meeting.

Even if the prosecutor had stipulated that Hicks had denied that he told Dottolo that Bierman wanted to buy stolen beans, the jury still could have believed Dottolo and not Bierman, LaCoste and Hicks. It should be remembered that Hicks' testimony only contradicts one facet of Dottolo's testimony. Thus, the jury had ample

grounds to convict Bierman irrespective of Hicks' testimony. Finally, we note that since Hicks is a convicted felon and had an obvious motive for denying involvement in a scheme to buy stolen beans it is doubtful that a stipulation would have impugned Dottolo's credibility significantly. Having reached these conclusions we need not entertain Bierman's arguments that the court erred by not forcing the U.S. Attorney or FBI agent to testify, not admitting the private investigator's report and not delaying the trial for a second time to facilitate arrival of the private investigator for testimony.

■ Appellant LaCoste urges this court hold certain evidence inadmissable because of prosecutorial misconduct involving the discovery process. Although Conradi's actions in this matter again disgrace his high office they miss the threshold for reversible error. The misconduct concerns discovery involving the following letter LaCoste sent to Bierman:

> Bernie, Some people in Baton Rouge are asking me questions about my contacts with you by phone around April, March, May of '79, about the time I was asking you for your help and information to obtain a pilot's license from the Coast Guard.
>
> If you know anything about this, would you contact me? I do not understand what this is about. Mickey LaCoste.
> /s/ Mickey LaCoste.

317 Magazine St.

N.O., La. 70130

I am listed in the book as Charles LaCoste in Kenner, La., if you are in N.O. Government exhibit 6–A. The letter was dated April 23, 1980, but the back and front of the envelope was postmarked April 23, 1981. Conradi questioned both LaCoste and Bierman about the letter and introduced it into evidence. LaCoste testified at trial that he mailed the letter in April of 1980. Conradi pointed out the discrepancy in dates during his closing argument in an effort to destroy LaCoste's credibility. Appellant complains that Conradi set a trap because the defense lawyers received a pho-

tocopy of the front side of the envelope that was too blurred to reveal the postmark. Again, Conradi's actions were incorrect. Conradi should have sent a photocopy of the back side of the envelope, which contains clearer postmarks. Nevertheless, this impropriety is not reversible error. Although he may have been unaware of its significance, LaCoste's defense attorney had an opportunity to see the envelope at the preindictment conference. In addition, through discovery he later received photocopies of the letter and envelope. If he could not determine the date of the postmark he should have asked for another photocopy or requested an opportunity to examine the envelope in person.

■ Moreover, this court also takes note of the fact that the letter was introduced during cross-examination of LaCoste, not during the prosecution's case-in-chief. As this court has noted: "... impeachment evidence introduced during the cross-examination of the defendant is outside the scope of Fed.R.Crim.P. 16." *United States v. Lambert*, 580 F.2d 740, 748 (5th Cir.1978). Finally, neither defendant objected to the introduction of the letter into evidence. Defendant's failure to object to evidence introduced at trial is judged under the "plain error" standard. *E.g., United States v. Reed*, 670 F.2d 622, 623 (5th Cir.) *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). The facts of this case do not indicate plain error. We reject the defendant's contention that his failure to object falls outside the contemporaneous objection rule because their silence was a strategic decision to avoid drawing attention to the evidence. Such reasoning should rarely be an exception to the rule because an attorney can always ask for a bench conference if he wishes to object without drawing attention to a matter.

■ Conradi's closing argument remarks about the inconsistencies and the possibility that the letter was written as an alibi do not constitute prosecutorial misconduct which prejudiced substantial rights of the defendants. Conradi said:

This letter that Mr. LaCoste dated April 23, 1980, wrote to Mr. Bierman about his pilot's license.... And I asked him: When did you get that? Well, a couple days after, seven days, eight days after it was written. I'm not sure.

Again, he's not sure about anything, but it was a couple of days after it was written. I said: well, what year was it? He finally said 1980, a couple of days after it was written. It was dated April 23, 1980. And then I asked Mr. LaCoste: when did you write that letter?

Well, after I had talked with you, Mr. Conradi, and Mr. Hipwell in Mr. Merrige's office, I got to wondering, so I wrote Mr. Bierman, and that was in 1980. But I want you to look at this, because you see, the letter is dated April 23, 1980. And they looked at the envelope, but they didn't look at the back of the envelope, April 23, 1981, a whole year later. A complete year later.

And what's in that letter? Mr. LaCoste says: Well, I've some questions about these—they've been asking me about these phone calls with you.

Now, Agent Canale testified that the Government got those phone calls on September 16, 1980, five months after he's supposed to have written the letter. Now, how could the Government be asking him about phone calls that they don't have? How could that be?

Is that possible? Or did this happen? Did Mr. LaCoste sit down, and I think he testified in front of the Grand Jury on April 16, 1981, and said: whew, boy, I'm in trouble now. I've got a problem. I told them something about a pilot's license, and I've got to cover my tracks. We've got to think up something quick. Could he have written Mr. Bierman a letter? Could he have put two letters in there? Could he have said: Well, hey, send you a letter, say you got this. But Mr. Bierman didn't throw away the envelop. Maybe he slipped.

(Record, vol. V, at 10–325—10–326). Conradi's remarks are proper under the circumstances.

Moreover, even if Conradi's closing remarks were improper the defense failed to object. Conradi's remarks fall far short of plain error. As we noted in a recent case involving a prosecutor's closing argument, plain error occurs:

> ... 'only if the error is so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of judicial proceedings and result in a miscarriage of justice.' [citation omitted]. The defendant's burden of showing plain error is a heavy one. [citation omitted]. And, under Rule 52, not even obvious, basic errors, justify reversal if they are harmless.

*United States v. Montemayor,* 684 F.2d 1118, 1124 (5th Cir.1982).

■ Bierman's last ground for reversal concerns his motion for severance. Co-defendants LaCoste and Canatella filed motions *in limine* to restrict the government's inquiry into their past involvement in the "Mississippi River Grain Scandals." They had received immunity for their testimony. After a hearing, the court granted their motions. After that ruling, appellant Bierman moved for a severance because he intended to bring out those facts in his own defense to show that Dottolo had learned information about the grain business from LaCoste and Canatella to make it appear to Bierman that they presented a legitimate transaction. In his motion for severance, Bierman argued that the prior criminal involvement of LaCoste and Canatella had made them circumspect and that they caused him to act in certain ways to conceal their own involvement while heightening his activity and apparent criminal exposure. Bierman contends that the defenses were irreconcilably antagonistic and that he was thus denied due process.

Bierman renewed his severance motion on the second day of trial. Judge Parker denied the motion, holding that the information Bierman was seeking to introduce would be inadmissible even in a separate trial because "the only purpose of your offer is to prove character or trait of character of your co-defendants for the purpose of

proving that they acted in conformity therewith ... and that is precluded by rule 404–a...." Record vol. III, at 9–7. Judge Parker then examined whether it might be admissible for other purposes such as proving intent, knowledge, scheme, or system. The court held that Bierman could prove the facts he sought to establish without resort to evidence about the "Mississippi River Grain Scandals." In balancing the public interest in joint trials against potential prejudice to the defendant, Judge Parker examined the facts before him and held that: "[t]here is already some evidence which has been introduced indicating that both Mr. Canatella and Mr. LaCoste had had long experience in the marine-grain elevator business, and you don't have to prove that they had been involved in some scandal to establish their familiarity with the business." Record vol. III, at 9–8. On these facts Judge Parker's ruling was clearly correct and does not begin to approach the level required for reversal. This court has held that it will not disturb a trial court's discretion in this matter "absent an affirmative showing of abuse of discretion.... To secure a reversal, more than some prejudice must be shown; the appellant must demonstrate that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *United States v. Berkowitz,* 662 F.2d 1127, 1132 (5th Cir. 1981).

For the foregoing reasons the convictions are

AFFIRMED.