Jerry Lynn SLOAN, Plaintiff in Error,

v.

STATE of Tennessee, Defendant in Error.

Court of Criminal Appeals of Tennessee.

Nov. 10, 1972.

Certiorari Denied by Supreme Court
March 5, 1973.

was convicted of robbery in the Criminal Court of Sullivan County and was sentenced to imprisonment for five years in the penitentiary, and has duly perfected an appeal in the nature of a writ of error to this Court.

Taking the same position advanced in his motion for a new trial, Sloan's only Assignments of Error challenge the sufficiency of the evidence to warrant and sustain the verdict of the jury. The jury's verdict of guilt, approved by the trial judge, strips the defendant of the presumption of innocence, with which the law clothed him throughout his trial, and he stands before this Court presumed to be guilty and he has the burden here of demonstrating that the evidence preponderates against the verdict and in favor of his innocence. The verdict so approved accredits the testimony of the prosecution witnesses and establishes the State's theory of the case. We may review the evidence only to determine whether it preponderates against the verdict, and in doing so we are required to take the verdict as having established the credibility of the State's witnesses. The verdict may not be overturned on the facts unless the evidence clearly preponderates against it and in favor of the innocence of the accused. Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, 1 Tenn.Cr.App. 1, 425 S. W.2d 799; Hancock v. State, 1 Tenn.Cr. App. 116, 430 S.W.2d 892; Morelock v. State, Tenn.Cr.App., 460 S.W.2d 861.

This rule governing appellate review of criminal convictions makes unnecessary and, indeed, inappropriate, any detailed discussion of the evidence pro and con. Hargrove v. State, 199 Tenn. 25, 28, 281 S.W. 2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

In the early morning hours of June 30, 1970 Ronald Hommell, Carl Jessie, and the defendant had been driving around in Jessie's car visiting bars and drinking beer. The defendant was driving because Jessie was intoxicated. They picked up Fergu-

---

Hal H. Carr, Blountville, for plaintiff in error.

David M. Pack, Atty. Gen., W. Henry Haile, Asst. Atty. Gen., Nashville, Carl K. Kirkpatrick, Dist. Atty. Gen., Kingsport, for defendant in error.

## OPINION

OLIVER, Judge.

Upon an indictment charging him with robbing Frankie Ferguson of $20, Sloan

son, who was walking along the road after his car broke down enroute to his employment at the Holston Valley Community Hospital where he was due to report for work at 4:30 a. m. They told Ferguson they would take him to work for 50 cents. He told them he only had 40 cents. What occurred during the remainder of the episode is controverted.

Ferguson's testimonial version, quite evidently accredited by the jury, was that the defendant then asked him for his wallet; that when he replied that he did not have any more money, the defendant said, "I believe you have"; that when he repeated that he had no more money, the defendant said, "You give me your wallet or I'm going to kill you," at the same time extending his right hand over the back of the front seat toward Ferguson; that, realizing he was outnumbered and fearing the defendant might have a gun, he gave him his wallet; that the defendant then removed a $20 bill from his wallet and then handed the wallet back to him; that when they got to the hospital, he and Jessie and Hommell got out of the car and the defendant remained inside; that after all four of them unsuccessfully searched the back seat for the money "to see if it was stuck back in the back seat," the defendant and Hommell departed in the car; that he did not summon a passing unarmed hospital guard because he did not know whether the defendant or the other two had a weapon "and if I'd of hollered, you know, called to the guard over there, he could of shot me, or anything else"; and that after the defendant and Hommell drove away, he went into the hospital and reported the incident.

Jessie, testifying as a prosecution witness, said that when Ferguson stated that he only had some change, either the defendant or Hommell asked him if he had a wallet and one of them asked to see it when Ferguson replied affirmatively; that when Ferguson handed his wallet over the front seat he appeared scared, because he had previously stated that he did not have any money; that he then heard some talk about a $20 bill and the defendant said, "I thought you said that you didn't have any money," and Ferguson replied, "My wife put it in there. I didn't know I had any"; that when they reached the hospital Ferguson demanded his money and the defendant said he had returned his money—that he had thrown it into the back seat; that he got out of the car when Ferguson and the defendant began arguing; and that the back seat was searched for the money. He denied seeing the money, denied knowing who took Ferguson's wallet and denied knowing he was threatened. Upon motion of the District Attorney General, the court permitted the State to interrogate Jessie as a hostile witness, during which he testified that he did not deny stating in the preliminary hearing that the driver (the defendant) threatened to kill Ferguson if he called the law, and agreed to the correctness of his preliminary trial testimony that "the other boy" (Hommell) struck him as he started to get out of his car and grabbed him to keep him from leaving, and that he got out because he didn't want any trouble and it looked like there might be a robbery going on and he wanted no part in it. With respect to such prior inconsistent statements, Jessie testified on cross-examination that at that time he was sick and nervous.

The defendant testified that he told Ferguson he was not driving in the direction of the hospital but would take him there if he wanted to pay for the gas; that Ferguson gave him 40 cents and said that was all the money he had, and he gave it back to Ferguson because he felt he might need it for food; that Ferguson then pulled out his billfold and handed him a $20 bill and said, "Stop and get change, and I'll give you a couple of dollars for running me up there"; that he agreed but later told Ferguson that no business places were open at that time and to forget it, and then gave the bill back to Ferguson; that when they reached the hospital, Ferguson claimed the money was missing, and that when he suggested looking for it in the car Jessie

jumped out and said he didn't want to have anything to do with it; that he and Hommell started home after the hospital guard passed; and that he did not threaten Ferguson or take his money.

In T.C.A. § 39–3901 the Legislature of this State has thus defined robbery: "Robbery is the felonious and forcible taking from the person of another, goods or money of any value, *by violence or putting the person in fear.*" (Emphasis supplied).

■ Plainly, our statute provides that robbery may be committed either by means of violence or by fear. It is to be applied in an alternative fashion to both the taking of goods by violence and to doing so by merely putting the person in fear. Only one of those elements is necessary, and employment of either to take goods or money from another is sufficient to constitute the crime of robbery. Snowball v. State, Tenn.Cr.App., 477 S.W.2d 240; James v. State, 215 Tenn. 221, 385 S.W.2d 86.

■ Where fear is employed to accomplish the crime of robbery, the obvious purpose is to intimidate and frighten the victim into docile nonresistance and meek compliance. The robber's technique is to operate upon the victim's natural fear of death or great bodily harm. So, in such cases, the important and controlling consideration is the state of the victim's mind at the time of submission or compliance with the robber's demands. In the very nature of things, the only acceptable standard in making that determination is a subjective one. When he accomplishes his purpose in that manner, the question is whether the victim fears that the robber intends to and is capable of carrying out his threats. He cannot be heard to defend his conduct on the basis that he did not in fact have the ability to execute his threats. Cooper v. State, 201 Tenn. 149, 297 S.W.2d 75.

■■ The law with respect to the fear that will support a charge of robbery is set out in 77 C.J.S. Robbery § 16:

"Putting the victim in fear of bodily injury is sufficient intimidation to sustain a charge of robbery. However, actual fear of such injury need not be proved, since a legal presumption of fear will arise from facts clearly indicating a cause therefor. It is not necessary that the victim should have feared bodily injury if he did not resist, it being sufficient if he feared it in the event he should resist . . .

"The fear of bodily injury sufficient to support a charge of robbery may be aroused by a word, or gesture, as where the victim is threatened with a gun or knife. Even a slight cause of fear or indirect language of a threatening character may be sufficient to constitute intimidation, and the victim may be deemed to have been put in fear if the transaction is attended with such circumstances of terror as in common experience are likely to create an apprehension of danger and induce a man to part with his property for the sake of his person."

More than 125 years ago the Supreme Court of this State defined fear as an element of robbery: "The fear constituting an element of the crime is fear of present personal peril from violence offered or impending." Britt v. State, 26 Tenn. 45; Hammond v. State, 43 Tenn. 129.

■ This record fully justifies the jury's finding that the defendant robbed Ferguson of a $20 bill by putting him in fear of death or great bodily harm. By Sloan's own testimony he did have possession of the bill. The jury has rejected his story as to how he acquired possession of the money and that he returned it to Ferguson.

We cannot agree with the defendant's argument that it is unreasonable to believe that the victim, a young man 19 years of age and weighing 180 pounds, had no reasonable ground to fear the defendant and was not forced to surrender his money by fear. The victim in this case was in the

company of three strange men, all of whom had been drinking. Upon this record the jury was warranted in finding that the defendant demanded the victim's wallet and threatened to kill him when at first he refused to surrender it, and that he gave it to Sloan only because of reasonable fear of death or bodily injury. It cannot be supposed that a reasonable person will submit to theft of his money or other property from his person without being subjected either to force or threatened physical harm.

After employing methods intended and calculated to instill submissive fear in his victim, a robber cannot be heard to say that they did not produce that effect or that the victim's fear was ill-founded and unreasonable.

Affirmed.

RUSSELL, J., and JOHN D. TEMPLETON, Special Judge, concur.