Jessie GRIFFIN, Jr. and Shelby G. White, Appellants,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Nov. 29, 1979.

Permission to Appeal Denied by Supreme Court March 10, 1980.

Joe B. Jones, Ural B. Adams, Jr., Bruce Kelly, Jr., Memphis, for appellants.

William M. Leech, Jr., Atty. Gen., Sylvia Ford Brown, Asst. Atty. Gen., Nashville, Michael B. Neal, M. Carter Myers, Asst. Dist. Attys. Gen., Memphis, for appellee.

## OPINION

DAUGHTREY, Judge.

The defendants-appellants, Jessie Griffin, Jr. and Shelby G. White, were convicted of armed robbery and sentenced to ten years imprisonment. On appeal they challenge the sufficiency of the convicting evidence, alleging specifically that the proof fails to establish that the robbery was committed by use of a deadly weapon. We find no reversible error, and we therefore conclude that their convictions must be upheld.

On October 22, 1977, Mr. Tommie L. Davis was approached by an acquaintance, later identified as the defendant Jessie Griffin, Jr., who asked Davis to drive him and three other men to "get a little drink." Davis acquiesced, and drove the four men to a local liquor store, where he bought them a half-pint of whiskey. After passing the bottle around, Jessie Griffin insisted that Davis take them to his aunt's house. Following Griffin's directions, Davis drove into a narrow alley where he was directed to stop. Griffin got out of the car and then ordered Davis out of the car. As he emerged, Griffin pulled his coat over his head and beat him. With the help of his three companions, Griffin continued to hit and kick Davis until he fell to the ground, where the men took his money, his car keys,

and his watch. While he was on the ground, Davis saw a .22 caliber pistol stuck in the sock of a man wearing "desert boots," whom Davis later identified as the defendant Shelby G. White. Davis testified that during the attack "[White] said, 'Let's get it over with,' and he reached down in his socks like he was going to get his pistol and he kept working on me . . . [When] I seen the pistol in his boots, that's the reason I wasn't trying to fight them." Davis said that because of White's conduct, as well as the beating he received, he was in fear of his life. Before fleeing on foot, the robbers attempted to steal Davis's automobile, but were thwarted in their efforts by a homemade locking device which Davis had installed in the vehicle.

As soon as his assailants left the area, Davis reported the incident to police, who came to the scene and apprehended Griffin in the neighborhood a short time later. Davis was taken to the site of Griffin's arrest and identified him as one of the robbers. He then went to police headquarters, where he identified Shelby G. White from a group of photographs. White was not apprehended until June 1978; the other two robbers were never caught or identified.

The investigating officer who had first spotted Griffin saw him break into a run at the sight of the patrol car and then throw something into a yard. Immediately after arresting Griffin, the officer searched the area where the article was thrown and found a wrist watch which was identified by Tommie Davis as the one taken from him during the robbery. Two days after the robbery and his arrest, Griffin made an oral statement to police in which he denied that he robbed Davis but said that he had gone alone to Davis's home, and that the two of them went to the liquor store together, where they both made purchases.

Griffin presented no evidence at trial. White, who is Griffin's brother, called an assistant administrator from a local work release facility, where White was an inmate on October 22, 1977. This witness brought with him White's sign-out record for the month of October 1977; it showed no entry for the 22nd, which the official interpreted to mean that White did not check in or out of the work release center on that date.* He testified on cross-examination, however, that the facility was a minimum security institution, not enclosed by a fence, and that the only locked doors were those in the sleeping quarters. According to the administrator's testimony, the inmates had free access to the rest of the facility, but were required to sign a log book when they left the building, even to go to the outdoor recreation area.

White took the stand and testified that he did not leave the work release center on October 22, 1977, except to go to the duck pond in the outdoor recreation area. He did not explain why his sign-out sheet failed to reflect this fact. The actual log book was not available at trial, since the daily sheets were destroyed after the sign-out times were recorded on each inmate's individual sign-out sheet.

In rebuttal the State called the only guard on duty during the pertinent hours of October 22, 1977. He testified that there were no "body counts" made that day because as the only guard on duty, he had to remain at the front desk at all times. He confirmed the fact that inmates were required to sign out each time they left the facility to go outdoors, but said that he knew that many did not, and that because they wore street clothes, it was difficult to keep track of exactly who was entering and leaving the center during visiting hours.

 White now insists, as he did before the jury, that the absence of an entry on his sign-out sheet provided him with an "iron-clad" alibi, and that the proof therefore preponderates against the jury's finding of guilt. The defense of alibi, however, presents a question of fact for the jury to determine, *Maxwell v. State*, 1 Tenn.Cr. App. 335, 441 S.W.2d 503 (1969), and thus

* White did check out at 8:00 A.M. the next morning, but never returned to the facility. He was a fugitive until June 1978.

the jury is the sole judge of the credibility of the witnesses at trial and the weight to be given to their testimony. *Forbes v. State*, 559 S.W.2d 318 (Tenn.1977). It is not our function to reweigh the evidence on appeal. *State v. Hatchett*, 560 S.W.2d 627 (Tenn.1978); *State v. Grace*, 493 S.W.2d 474 (Tenn.1973). We may only review the record, taken in a light most favorable to the State, "to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also Tennessee Rules of Appellate Procedure, Rule 13(e). We conclude that the jury could reasonably believe that the defendant White left the work release facility without signing out, assisted in the perpetration of the robbery, and returned to the facility. Moreover, he was identified by the victim from photographs viewed on the date of the offense and later in court. It therefore appears that the evidence supports the finding of guilt beyond a reasonable doubt.

Finally, the defendants argue that the proof fails to establish that the robbery was accomplished by use of a deadly weapon. While it is true that the victim, Tommie Davis, testified that White never removed the gun from his sock, he nevertheless testified that White reached for it two or three times, saying on one occasion, "let's hurry up and get it over with." Davis also testified that he was put in fear of his life by this action.

Under Tennessee law, it is unnecessary to prove that the weapon was drawn in order to sustain a conviction for armed robbery. In *Burgin v. State*, 217 Tenn. 682, 400 S.W.2d 539 (1966), the Court said that robbery is accomplished by use of a deadly weapon when the deadly weapon is in the possession of the robber during the commission of the crime, even though the weapon is not openly displayed or brandished. In the case at bar, the victim saw the deadly weapon involved, and was greatly frightened by White's threatening motions. We think this evidence is sufficient to support the jury's determination that the offense here was accomplished by use of a deadly weapon. *Cf. White v. State*, 533 S.W.2d 735 (Tenn.Cr.App.1975).

We find no reversible error in the record. The judgment of the trial court is therefore affirmed.

WALKER, P. J., and TATUM, J., concur.