IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 7, 2004

## STATE OF TENNESSEE v. JAMES HARVEY FARRAR, JR.

**Direct Appeal from the Circuit Court for Bedford County**
**No. 15205     Lee Russell, Judge**

_____

**No. M2003-02271-CCA-R3-CD - Filed March 15, 2005**

_____

This is a direct appeal from convictions on a jury verdict of attempted aggravated robbery, resisting arrest and contributing to the delinquency of a minor. The trial court sentenced the Defendant to a term of nine years, and concurrent sentences of six months, and eleven months and twenty-nine days, respectively. On appeal, the Defendant raises one issue, arguing that there was insufficient evidence to find him guilty of attempted aggravated robbery. We affirm the judgments of the trial court but reduce the effective sentence to eight years.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Michael Collins, Shelbyville, Tennessee, for the appellant, James Harvey Farrar, Jr.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Mike McCown, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The conviction challenged in this appeal stems from the failed robbery of a small retail outlet in Shelbyville on December 2, 2002.[1] The record reflects that the Defendant, James Harvey Farrar, Jr., and a seventeen-year-old accomplice confronted a store manager and were attempting to push

_____

[1] While the Defendant was convicted of three separate offenses associated with this incident, on appeal he challenges only his felony conviction for attempted aggravated robbery, alleging insufficient evidence. The Defendant does not challenge his misdemeanor convictions for resisting arrest or contributing to the delinquency of a minor.

their way into his place of business when the Shelbyville police arrived and placed the two would-be thieves under arrest. A knife was discovered on the Defendant during a brief struggle preceding his apprehension, and a shotgun used in the robbery attempt was discovered at the scene of the crime. A Bedford County grand jury indicted the Defendant on five charges: (1) attempted aggravated robbery; (2) possession of a gun with an altered serial number; (3) unlawful possession of a weapon as a felon; (4) resisting arrest; and (5) contributing to the delinquency of a minor.[2] A jury trial was conducted on June 17, 2003.

At trial, Mr. Jones (the victim) testified that at the time of the crime he was operating his mother's store, Mondo Music, in Shelbyville. On the evening of December 2, 2002, the victim closed the store by locking the front door shortly after 9:00 p.m. There were several customers remaining in the store on whom he was waiting, when he heard a noise at the front door. A customer warned him as he walked to the door that there were two suspicious looking individuals outside. In response to the warning, the victim planted his foot just in front of the door and opened it only a few inches. The victim stated that when he opened the door he saw "two guys with masks . . . ." The victim further stated that the Defendant carried "in his pant leg [what] looked like a shotgun," and because of this situation the victim testified he "automatically got scared . . . ."

Thinking the masked and armed men at his door were about to "kick the door in," the victim quickly pushed it shut and "put the dead bolt on." He then shouted to his customers, "[r]un to the back. They got a gun. Call 911." The customers fled to the bathroom in the rear of the store and telephoned the police. At first the victim remained in the front of the store shouting at the robbers that the store was closed and they should go away, but he soon became fearful for his life, believing that they would shoot through the door, and he too fled to the back of the store. The victim and his customers returned to the front of the store only after the police arrived. On cross-examination, the victim admitted that the Defendant never made any direct threats, never pointed a gun or knife at him, never expressly stated he was robbing the store, never actually entered the store, and neither took nor damaged any property.

Oscar Marcus, one of the customers in the store during the attempted robbery, testified that he witnessed the confrontation at the front door, but did not actually see the Defendant until after the police had placed him under arrest. He also stated that the victim instructed him and the other customers to hide in the back of the store because the men at the door had a gun. When he left the store, he noticed a shotgun under the passenger side of his SUV parked about five meters from the front door to the store.[3]

---

[2]Just prior to trial, the two weapon possession charges were dismissed at the request of the State.

[3]At trial, Mr. Marcus testified in Spanish with a court-certified interpreter translating his testimony into English. There was some confusion on whether the witness's estimate of five meters required translation into the United States' customary system of measurements. The trial court resolved the issue by stating: "[i]f he can get it into meters, that creates a record for us. The appellate court could always look it up." We appreciate the trial court's confidence in our research and mathematical skills, and note that five meters would equate to approximately 16.4 feet.

Officer Billy Smith of the Shelbyville Police Department testified that he was the first officer to arrive at the scene. When he pulled into the parking lot he observed two individuals at the front door of Mondo Music with their faces covered with bandanas. As he approached in his police car with the emergency lights activated, the two suspects moved toward the parked SUV. Officer Smith exited his cruiser and instructed the two suspects to place their hands on the hood of the car. Officer Smith testified that the Defendant's young accomplice complied, but the Defendant became "belligerent" and "advanced toward [Officer Smith] aggressively." The Defendant yelled at the officer and advanced around the side of the police car toward Officer Smith, who was forced to push the Defendant down onto the hood of the car. The Defendant continued to struggle, and moved his hand toward his sweatshirt pocket. Officer Smith suspected he had a weapon and drew his gun. At this point the second police unit arrived at the scene, and Officer Rod Stacy assisted in handcuffing the Defendant. Officer Stacy testified that found an open lock-blade knife in the Defendant's sweatshirt pocket.

Officer Jerry Lawrence testified that he was the third police officer to arrive at the scene, and the two suspects were already apprehended when he arrived. As he searched the scene for evidence, he discovered a shotgun under the passenger side of a SUV parked in front of Mondo Music. Officer Smith further testified that as he was transporting the Defendant to the police station, the Defendant made several spontaneous remarks, including statements to the effect that the police would not find any prints on the shotgun as well as several death threats directed at Officer Smith personally.

The Defendant's seventeen year-old accomplice, Charles "Chuckie" Brandon testified at the trial that he met the Defendant for the first time the day of the crime. Mr. Brandon stated that after consuming alcohol and Valium together, he followed the Defendant to a house where the Defendant obtained a shotgun. The Defendant put the gun in his baggy sweat pants and they both went to the Mondo Music store. Mr. Brandon testified that after they were refused entry to the store, the Defendant pushed on the front door and started to "pull out the 12 gauge [shotgun]" from his pants when the police arrived. He then stated that the Defendant slid the gun under the SUV as the first police car approached. He also testified that after the police told them to put their hands on the car hood, he complied but the Defendant "pulled out a knife, opened it, and started walking towards the officer." On cross-examination, Mr. Brandon admitted that he was on "pills" and "liquor" at the time and his memory may have been clouded in some areas. The Defendant elected not to testify on his own behalf and the defense did not call any other witnesses.

At the conclusion of the trial, the jury found the Defendant guilty of attempted aggravated robbery, resisting arrest, and contributing to the delinquency of a minor. A sentencing hearing was conducted in August of 2003, at which the Defendant testified that he believed he had mental, drug and alcohol problems. The Defendant admitted that his prior felonies would make him a Range II multiple offender. However, the Defendant also maintained his claim the he was not guilty of attempted aggravated robbery, and that he only went to the store to sell the shotgun in order to obtain some cash.

At the conclusion of the sentencing hearing, the trial court noted that the Defendant's record revealed at least three prior felony convictions, which made the Defendant a Range II multiple offender with a presumptive sentence of six years. The trial court concluded that three enhancement factors applied, and sentenced the Defendant to nine years in the custody of the Tennessee Department of Correction (TDOC) for the Class C felony attempted aggravated robbery conviction. For his misdemeanor convictions the Defendant was sentenced to six months for resisting arrest and eleven months and twenty-nine days for contributing to the delinquency of a minor, both to be served concurrently with his nine-year sentence in the TDOC. The Defendant filed a motion for new trial in August of 2003, which was denied following a hearing conducted in September of 2003. The Defendant timely filed a notice of appeal.

**ANALYSIS**

On appeal, the Defendant argues the single claim that there was insufficient evidence to sustain his conviction of attempted aggravated robbery, and, at most, he should have been convicted of attempted burglary. To support this claim the Defendant asserts that the State failed to adequately prove that he: (1) used or displayed a deadly weapon in his attempt to commit a crime; (2) intended theft of property; and (3) used violence or fear. Therefore, he claims, no rational trier of fact could find him guilty of attempted aggravated robbery. We disagree. While not addressed in his appellate brief, we have determined that the Defendant's sentence was impermissibly enhanced in violation of Blakely v. Washington, 124 S.Ct. 2531 (2004), and we therefore reduce his sentence from nine years to eight.

**I. Insufficient Evidence**

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d

at 236; <u>Bland</u>, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. <u>See</u> <u>Evans</u>, 108 S.W.3d at 236-37; <u>Carruthers</u>, 35 S.W.3d at 557.

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). Our Supreme Court has determined that the use of violence or fear "must precede or be concomitant or contemporaneous with the taking to constitute robbery . . . ." <u>State v. Owens</u>, 20 S.W.3d 634, 636 (Tenn. 2000). A robbery becomes aggravated when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). A person commits a criminal attempt when the person "[a]ct[s] with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3). Thus, at trial, the State bore the burden of proving that the Defendant intended: (1) the theft of property from another; (2) by violence or fear; (3) with the use or display of a deadly weapon; and (4) acted, with intent to complete the offense, in a manner that constituted a "substantial step" toward the commission of the crime.

The record demonstrates that the Defendant obtained a gun, masked his face and tried to push his way into the victim's store after it was closed and he was asked to leave. The victim was able to identify the Defendant, stated the Defendant possessed a shotgun, and testified that he was afraid during the incident. The Defendant was observed by police at the front door of the store with his face covered with a bandana, and a shotgun was recovered at the scene of the crime. We conclude the Defendant has failed to meet his burden of demonstrating why the evidence presented at trial was insufficient to support a conviction for attempted aggravated robbery.

The Defendant's argument that he did not use or display a deadly weapon as required by the aggravated robbery statute is misplaced. This Court has previously ruled that "it is unnecessary to prove that the weapon was drawn" in order to sustain a conviction for robbery with the use of a deadly weapon, regardless of whether or not the weapon was "openly displayed or brandished." <u>Griffin v. State</u>, 599 S.W.2d 274, 276 (Tenn. Crim. App. 1979) (holding the evidence was sufficient to support armed robbery conviction where the defendant never removed the gun from his sock, but the victim knew he had it and feared for his life). <u>See</u> <u>also</u> <u>State v. Davenport</u>, 973 S.W.2d 283, 286 (Tenn. Crim. App. 1998) (holding that the evidence was sufficient to support aggravated robbery where the defendant fashioned a rag over his empty hand to lead the store clerk to believe he held a weapon). Here, the victim observed that the Defendant had a large shotgun in his pant leg and was placed in fear because of it. This shotgun was later found at the scene of the crime. <u>See</u> <u>State v. Smith</u>, No. M2002-01077-CCA-R3-CD, 2003 WL 1855098, at *3 (Tenn. Crim. App., Nashville, April 8, 2003) (holding that evidence was sufficient to support aggravated robbery conviction where the same type of weapon used in the crime was found "on the ground near the scene of the [defendant's] arrest"). We conclude that the evidence supports a finding that the Defendant did use a deadly weapon in the commission of an attempted robbery.

The Defendant's argument that he never expressly demanded any money or stated that he was robbing the victim, and is therefore not guilty of attempted robbery, is also misplaced. At trial, the Defendant's accomplice testified that the Defendant stated, "this is what I needed" when he saw the shotgun at a friend's house, took it, and concealed it in his pant leg. The jury also heard testimony from the victim and other witnesses that the Defendant concealed his face and hands, attempted to enter the victim's store after it was closed, approached the victim with a weapon, continued to push on the front door to the store after he was refused entry and asked to leave, and was in the act of pulling the gun out of his pants when the police arrived. Accordingly, we find ample evidence to support the jury's conclusion that the Defendant took substantial steps toward his intended goal of robbing the victim. As stated above, questions concerning the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236.

The Defendant's argument that he never directly threatened the victim, thereby putting him in fear, also fails. This Court has previously determined that "[w]here fear is employed to accomplish the crime of robbery, the obvious purpose is to intimidate and frighten the victim into docile nonresistance and meek compliance." Sloan v. State, 491 S.W.2d 858, 861 (Tenn. Crim. App. 1972). Therefore, to determine the element of fear, "the important and controlling consideration is the state of the victim's mind" during the confrontation. Id. While noting that the test was necessarily a "subjective one," we nonetheless defined the element of fear in our robbery statute as, "fear of present personal peril from violence offered or impending." Id. (quoting Britt v. State, 26 Tenn. 45 (Tenn. 1846)).

In the case at hand, the victim stated: "[w]hen I opened the door, I seen two guys with masks, bandanas, over their face . . . . I saw one of them in his pant leg looked [sic] like a shotgun. What came to my mind was a shotgun. And, you know, I guess when I seen that, you know, I automatically got scared . . . ." We find evidence sufficient to support the jury's determination that the victim was indeed in fear of personal peril from impending violence when confronted by the armed Defendant the night of the attempted robbery. After considering all the evidence in a light most favorable to the prosecution, we determine that a rational trier of fact could certainly have found all the essential elements of attempted aggravated robbery beyond a reasonable doubt. Accordingly, the Defendant's claim of insufficient evidence to support his conviction is without merit.

## II. Sentencing Issues.

While not raised on appeal, we are nonetheless obligated to address the Defendant's enhanced sentence in light of the United States Supreme Court's recent opinion in Blakely v. Washington, 542 U.S. __, 124 S.Ct. 2531 (2004), reh'g denied, 2004 WL 1872712 (U.S. Wash. Aug 23, 2004). In Blakely, the high court struck down a provision of the Washington state sentencing guideline, quite similar to the one in Tennessee, that permitted the trial judge to impose an "exceptional sentence" after the court made a post-trial determination that certain statutory enhancement factors existed. The Supreme Court determined that the protections in the Sixth Amendment to the federal Constitution would allow a defendant's sentence to be increased only if

the enhancement factors relied upon by the judge were based on facts reflected in the jury verdict or admitted by the defendant. See id., 124 S.Ct. at 2537. The Court concluded that "every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment." Id. at 2543.

The Blakely decision calls into question the validity of Tennessee's sentencing statutes, insofar as they permit trial courts to increase a defendant's presumptive sentence based upon enhancement factors found by a trial judge as opposed to findings made by a jury. In this case, the Defendant was classified as a Range II multiple offender. See Tenn. Code Ann. § 40-35-106. Therefore, the Defendant's Class C felony conviction for attempted aggravated robbery carried a sentencing range of six to ten years. See Tenn. Code Ann. § 40-35-112(b)(3). The Defendant's presumptive sentence prior to any enhancements was the statutory minimum for his range, six years. See Tenn. Code. Ann. § 40-35-210(c). However, the trial court found the following enhancement factors applied to the Defendant: (1) he had a history of prior convictions in addition to those necessary to establish his range; (2) he was a leader in the commission of the crime; and (3) he had a history of failing to comply with the conditions of community release. See Tenn. Code Ann. § 40-35-114(2), (3) and (9). Accordingly, the trial court enhanced the Defendant's sentence from the presumptive six years to nine years.

The Supreme Court has clearly stated that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490 (emphasis added). In Blakely, the Supreme Court applied the Apprendi rule to Washington's sentencing guidelines and established it as a constitutional "right" applicable to the states. Blakely, 124 S.Ct. at 2538-39. In the case at hand, the Defendant's sentence was enhanced in part due to his extensive history of criminal convictions in addition to the prior felony convictions used to establish the Defendant as a Range II multiple offender. The presentence report, included in the record on appeal, listed no less than ten prior criminal convictions. Accordingly, the trial court's enhancement of the Defendant's sentence based on his record of prior convictions does not run afoul of Apprendi or Blakely. See State v. Antonio Fuller, No. M2002-02377-CCA-R3-CD, 2004 WL 1562546, at *31 (Tenn. Crim. App., Nashville, July 13, 2004). The comments made by the trial court at the sentencing hearing clearly show that the court gave great weight to this factor.

The trial court also enhanced the Defendant's sentence based upon its finding that enhancement factors three and nine applied, that the Defendant was the leader in the commission of a crime involving two people and that the Defendant had a history of unwillingness to comply with the conditions of sentences involving community release. These two enhancement factors were not submitted to a jury or admitted by the Defendant. Therefore, the rule in Blakely precluded the application in this case of enhancement factor number three, see State v. Randy Miles, No. M2003-01492-CCA-R3-CD, 2004 WL 2218469, at *11 (Tenn. Crim. App., Nashville, Sept. 30, 2004), and enhancement factor number nine, see State v. Chester Walters, No. M2003-03019-CCA-R3-CD, 2004 WL 2726034, at *22 (Tenn. Crim. App., Nashville, Nov. 30, 2004). Accordingly, the trial court erred in applying these factors.

The trial court properly gave great weight to the Defendant's previous history of criminal convictions, but improperly applied two additional enhancement factors. Based on our de novo review, we have determined the Defendant's sentence should be modified to eight years to be served in the Department of Correction.

## CONCLUSION

For the foregoing reasons we affirm the trial court's judgments as to the convictions, but remand for entry of a judgment modifying the sentence on the Defendant's felony conviction to eight years.

_____
DAVID H. WELLES, JUDGE