IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 21, 2017

STATE OF TENNESSEE v. LENARDO DEWAYNE SPENCER,
REGINALD TYRONE BAXTER, JR., AND DEANDRE JAJUAN DEAN

Appeal from the Circuit Court for Williamson County
Nos. I-CR058025-A, I-CR058025-B, I-CR058025-C  Michael Binkley, Judge

_____

No. M2016-01219-CCA-R3-CD

_____

After a jury trial, the defendants, Lenardo Dewayne Spencer, Reginald Tyrone Baxter, Jr., and Deandre Jajuan Dean, were convicted of robbery and theft of property over $1000. On appeal, the defendants assert the evidence was insufficient to support their robbery convictions, arguing the alleged taking was not accomplished by the use of violence or fear. The defendants also claim prosecutorial misconduct in the State's closing argument and challenge the State's expert witness testimony. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and TIMOTHY L. EASTER, JJ., joined.

Elizabeth Ann Russell, Franklin, Tennessee, for the appellant, Lenardo DeWayne Spencer.

Matthew J. Crigger, Brentwood, Tennessee, for the appellant, Reginald Tyrone Baxter, Jr.

Shane K. McNeill, Thompson's Station, Tennessee, for the appellant, Deandre Jajuan Dean.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Kim R. Helper, District Attorney General; and Tammy Rettig, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTS

This consolidated appeal concerns the October 25, 2012, robbery of Platinum Jewelers in Williamson County by the three defendants. For his involvement, each defendant was charged with one count of robbery, elevated to a Class B felony as the State alleged the defendants acted in concert with one another, one count of theft of property greater than $1000 but less than $10,000, a Class D felony, and one count of conspiracy to commit robbery, a Class D felony.

At trial, William Crawley, stated he was working at Platinum Jewelers on October 25, 2012, when Baxter and Dean entered the store "posed as customers." Mr. Crawley described the defendants as "standoffish," which made him and fellow employee, Michael Brown, "real cautious" of the pair. Though Baxter asked if Platinum Jewelers made custom jewelry, Dean said nothing, and the two left within minutes of entering the store. After Baxter and Dean left, Mr. Brown placed a gun, normally kept in the store, on the front desk.

Approximately an hour later, Mr. Crawley was alone in the store when he noticed a silver Dodge Magnum enter the parking lot. Mr. Crawley recognized Baxter as he entered the store for a second time, asking for a quote on a diamond. Less than a minute later, Dean and Spencer entered the store. Within seconds, Mr. Crawley saw Dean and Spencer "prop[] themselves up" on an open display case and reach inside. Spencer grabbed "a whole tray of watches, Luminox watches, and then [] Dean, he grabbed tennis bracelets." After the defendants began taking jewelry, Dean yelled: "If you move, we'll beat your ass." At the time of Dean's threat, Baxter was standing "within a foot" of Mr. Crawley, while Dean and Spencer were approximately twenty to twenty-five feet from his person.

Mr. Crawley was frightened. He ran to the back of the store, pressed the panic button, and called 911. Mr. Crawley stated "as soon as . . . [he] got to the back, [the defendants] were already running out the door." Detailing his fear further, Mr. Crawley explained: "I was by myself. I had . . . three men that had threatened me and there was just a lot going through my mind that . . . made me scared and I didn't know what . . . could happen. I was just in fear of harm." According to Mr. Crawley, the defendants ran out of the store approximately five seconds after Dean made the threat. Two to three seconds later, Mr. Crawley pushed the panic button. He explained the entire episode happened "very fast."

- 2 -

During cross-examination, Mr. Crawley stated he believed the defendants were going to steal from Platinum Jewelers regardless of Dean's threat. He also assisted defense counsel with a demonstration. Specifically, defense counsel extended a yellow rope across the courtroom until it reached a distance, which, according to Mr. Crawley, illustrated the space between him and Dean when Dean made the threat. At the end of the demonstration, the yellow rope reached approximately twenty to twenty-five feet.

Once outside of the store, the defendants fled the scene in the silver Dodge Magnum. Officer Matt Hughey, of the Brentwood Police Department, spotted the defendants' vehicle on Interstate 65 after a "be on the lookout," or "BOLO," for the silver Dodge Magnum was issued. Officer Hughey noticed the vehicle was driving slowly. He pulled behind the silver Dodge Magnum and initiated his lights and siren. The defendants' vehicle then sped up rapidly, leading Officer Hughey on a high-speed chase reaching speeds of 120 to 130 miles per hour.

Officer Hughey lost sight of the silver Dodge Magnum after it exited the interstate onto Harding Road. With the help of the Metro Nashville Police Department, the vehicle was soon located at the Audubon Park apartment complex. The defendants, however, were not inside the vehicle.

Detective William Traughber, of the Metro Nashville Police Department, established a perimeter around the apartment complex and began searching the surrounding wood line. Officers soon noticed a trail of jewelry. By following the jewelry-laden path, officers found the three defendants hiding in a tree house located in the backyard of a residential property. The tree house was approximately 150 yards from the resting place of the silver Dodge Magnum.

Officer Andrea Clark of the Franklin Police Department documented the items found upon the defendants' arrest. Specifically, she noted five Luminox watches, car keys, a cell phone, and a red shirt. Photographs of the stolen Luminox watches and bracelets were also entered into evidence. According to Mr. Crawley, the defendants stole Luminox watches totaling $5,835.00. Officers also located a Luminox display board in the silver Dodge Magnum, which was purchased by Baxter on October 24, 2012, the day before the robbery.

Detectives Richard Spaulding and Andrew Green interviewed the defendants in the Criminal Investigation Division of the Franklin Police Department. The interviews were recorded, portions of which were played for the jury at trial. Video footage of Spencer alone in the interview room showed him reach into the front of his pants, move off camera, and then place a black and orange Luminox watch on the desk in the interview room.

Additionally, while being interviewed, Dean asked to speak with Baxter. Dean and Baxter were then placed in the same interview room, and their conversation was recorded and transcribed, both of which were provided to the jury. Baxter asked Dean what he told the investigating officers, and he explained possible outcomes of the investigation to Dean, including pretrial diversion and bonds. Baxter is also heard saying, "You know, I didn't do nothing, brother," and, "[s]o crazy how y'all came in there when I was really talking business." Subsequent to his conversation with Baxter, Dean waived his *Miranda* rights and confessed to stealing from Platinum Jewelers. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). According to Detective Green, Dean "stated that he had stolen several items from the store, but that he didn't see it that it was a robbery, he thought it was just a theft."

Baxter also waived his *Miranda* rights. *Id.* Detective Green stated subsequent to his waiver, "[o]ne of the first things that Mr. Baxter did was he had dropped a bracelet onto the floor of the interview room and he said, here, that's y'all bracelet." Baxter also explained:

> The store clerk was going to order him a chain and whatever the time frame between his first – his first entrance into the store and his second, that the clerk was going to have this white gold chain for him. He said that also that he was showing the clerk a diamond when – then a commotion occurred behind him.

In response to the defense's cross-examination of Mr. Crawley, the State, over the objection of the defense, qualified Detective Green as an expert in technical training and knowledge of the "21-foot rule" and defensive safety tactics. Detective Green explained the "21-foot rule" as follows: "if you stay planted at the 21-foot distance, a knife-wilding (*sic*) assailant is going to be able to cover that distance and get within striking distance before you can employ your firearm." He explained that there typically is "just not time" to appropriately defend oneself from an attacker twenty-one feet away as that "distance is covered so quickly there is just not time to react."

Detective Green demonstrated the "21-foot rule" using the yellow rope introduced during Mr. Crawley's testimony. After laying the yellow rope out, Detective Spaulding stood approximately one foot from Detective Green in order to represent Baxter. Then, an officer of the court simulated an attack starting at the end of the rope. According to Detective Green, the attacker "covered the distance pretty quickly." Afterwards, Detective Green opined it would take someone one to two seconds to travel a distance of twenty to twenty-five feet. The State then rested.

- 4 -

Dean testified on his own behalf at trial. Dean explained Baxter is his "favorite brother" and he had known Spencer for approximately seven months prior to the robbery. He admitted that during his initial visit to Platinum Jewelers on October 25, 2012, he noticed a display case was left open. Dean went back to Platinum Jewelers a second time "[t]o see if [he] could steal something." He admitted to committing the theft, but denied Baxter and Spencer's involvement of the same. However, Dean also stated: "At the same time we reached over the counter, reached for the jewelry, I had grabbed the watches and [Spencer] grabbed the bracelets." Dean also admitted to threatening Mr. Crawley, stating, "I just released some words. I can't remember the exact words, I can't remember exactly what I said, but I won't discredit [Mr. Crawley] what he had said. If he said I said we or I or they, that is what I said. It just happened so fast."

Dean then described the defendants' actions after the robbery. Spencer drove the silver Dodge Magnum as they fled the scene. He explained they "got on the interstate [and] everybody started putting [the stolen merchandise] in they pocket. . . . And about 3 seconds after that the police lights hit behind us." He testified the three defendants ran from the vehicle once parked at the apartment complex, stating: "We had just been on a high speed chase, two of us had stolen jewelry." The three defendants then ran through the woods surrounding the apartment complex and into a treehouse. Dean explained the three remained in the treehouse together until they were forced out and arrested by police officers. He confirmed none of the defendants attempted to get out of the vehicle at any point during the chase. Dean explained he believed he committed a theft, not a robbery, because "I already had possession of the jewelry before I even made the statement. I just feel like I didn't know it was a robbery until I got into the police department." Dean did not offer any additional proof. Baxter and Spencer rested without offering any proof.

At the close of the evidence, the jury returned guilty verdicts against each defendant for theft and robbery, but acquitted them of conspiracy to commit robbery. The trial court merged each of the defendants' theft convictions into their robbery convictions, and sentenced each defendant according to his offender status. After sentencing hearings, the trial court issued a written order imposing the following sentences: Spencer received a fifteen-year sentence to be served at thirty-five percent as a multiple offender; Baxter, also a multiple offender, was sentenced to seventeen years at thirty-five percent; and Dean, a standard offender, received a nine-year alternative sentence with one year to serve and eight years of supervised probation. In addition, the trial court imposed a $10,000 fine on each defendant. This timely appeal followed.

## ANALYSIS

On appeal, the defendants present three issues for our review. First, the defendants challenge the sufficiency of the evidence for their robbery convictions. The

defendants also allege prosecutorial misconduct throughout the State's closing arguments. Finally, the defendants challenge Detective Green's expert testimony as irrelevant. The State asserts sufficient evidence exists to sustain the defendants' robbery convictions. Further, the State argues the defendants are not entitled to relief as to the alleged prosecutorial misconduct or Detective Green's expert testimony as these issues have been waived. Upon our thorough review of the record, we agree with the State and affirm the judgments of the trial court.

I.      *Sufficiency of the Evidence*

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d

776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

Theft, as charged, is committed "if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-14-103(a). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401. In the present indictment, the State alleged the defendants committed robbery "while acting in concert with two (2) or more other persons." Tenn. Code Ann. § 39-12-302(a).

According to the Tennessee Supreme Court, "whether a taking is properly characterized as a theft or a robbery is contingent upon whether and when violence or fear is imposed." *State v. Owens*, 20 S.W.3d 634, 637 (Tenn. 2000). "Thus, it is the use of 'violence' or 'fear' that elevates a theft to robbery." *State v. Bowles*, 52 S.W.3d 69, 80 (Tenn. 2001). Fear is "fear of present personal peril from violence offered or impending." *Id.* Fear, in this context, "may be aroused by a word, or gesture . . ." and "[e]ven a slight cause of fear or indirect language of a threatening character may be sufficient to constitute intimidation." *State v. Hollis Fisk, Jr.*, No. M2015-01552-CCA-R3-CD, 2016 WL 4133417, at *6 (Tenn. Crim. App. Aug. 2, 2016) (quoting *Sloan v. State*, 491 S.W.2d 858, 861 (Tenn. Crim. App. 1972) *no perm. app. filed*.

In order to constitute a robbery, the requisite violence or fear must precede or be concomitant or contemporaneous with the taking. *Owens*, 20 S.W.3d at 641. In *State v. Swift*, 308 S.W.3d 827 (Tenn. 2010), our Supreme Court confirmed "[t]he temporal proximity between the taking of the property and the use of violence or fear is the sole relevant factor" when elevating theft to robbery, and this temporal proximity is assessed by ascertaining when the taking was complete. *Id.* at 829. As such, "[w]hether a victim

was put in fear under the totality of the circumstances is a question for the jury." *Hollis Fisk, Jr.*, 2016 WL 4133417, at *6 (citations omitted).

Here, the defendants allege the State failed to prove they accomplished the subject taking by the use of fear or violence. We disagree as the evidence produced at trial established Dean threatened Mr. Crawley during the theft, thus elevating the defendants' crime to robbery. We first note that the defendants concede on appeal that Dean's threat satisfies the temporal requirement necessary to sustain a robbery conviction, admitting the threat "was made contemporaneously with the taking." Nonetheless, the defendants assert robbery was not proven because "the threat made by Mr. Dean did not bring about the taking of the property, but rather, was merely incidental to the taking." After our review, we find no merit in the distinction the defendants set forth on appeal.

The record clearly establishes that the taking and threat occurred contemporaneously with one another. Mr. Crawley testified that while Baxter attempted to distract him, Spencer and Dean entered the store and began taking watches and bracelets from an open display case. As the defendants took the jewelry, Dean threatened Mr. Crawley, saying: "If you move, we'll beat your ass." Mr. Crawley testified that he feared the defendants. He estimated five seconds elapsed between Dean's threat and the defendants' exit from the store. Viewing this evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of robbery beyond a reasonable doubt. The defendants are not entitled to relief.

In support of their sufficiency challenge, the defendants also argue Mr. Crawley's testimony, wherein he stated the taking would have happened regardless of Dean's threat, relieves them of their robbery convictions. Upon our review of the record, however, it is apparent the jury weighed Mr. Crawley's statement against the vast amount of evidence produced against the defendants at trial, and found in favor of the State. This Court will not reweigh the evidence. *Dorantes*, 331 S.W.3d at 379. This issue is without merit, and the defendants are not entitled to relief.

In the alternative, the defendants argue the "evidence was insufficient to establish that the [defendants] acted in concert with one another." Though the defendants admit Baxter and Spencer "intentionally, knowingly, and indeed committed a theft," they claim the two "did not intend to promote or assist in the commission of a robbery." The record disagrees.

One acts in concert with another if the defendant acts "with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2). This Court has previously held, "[a]ll who

are present at the commission of a robbery, rendering it countenance and encouragement, ready to assist should the necessity arise, are liable as principal actors." *Maxwell v. State*, 441 S.W.2d 503, 504 (Tenn. Crim. App. 1969). Thus, "[t]o be criminally responsible, the accused need not have taken any [merchandise] from the victim with his own hands, or actually participated in any other act of force or violence; it is sufficient if he was present, aiding and abetting, or ready and willing to aid if necessary." *Id.* (citations omitted).

Here, the record clearly supports the jury's finding that the three defendants acted in concert with one another during the commission of the robbery of Platinum Jewelers. According to Mr. Crawley, Baxter attempted to distract him while Dean and Spencer stole jewelry from an open display case. After fleeing the crime scene, all three defendants put stolen merchandise in their pockets. After leading officers on a high-speed chase, the three defendants ran through a wooded area, leaving a trail of the stolen merchandise behind. As a result, officers found the defendants hiding in tree house, and arrested them. After being arrested, Baxter and Spencer pulled stolen merchandise from their clothing at the police department. Furthermore, Dean admitted at trial that he threatened Mr. Crawley while stealing from the store and all three defendants admit to theft on appeal. Thus, by the defendants' admissions alone, the evidence is sufficient to support that each acted in concert with one another. Dean also confirmed that none of the defendants attempted to remove themselves from the criminal activity before, during, or after the robbery. Accordingly, the evidence is sufficient to support that the defendants acted in concert with one another during the commission of the theft and the robbery. The defendants are not entitled to relief.

II.     *Prosecutorial Misconduct*

The defendants next argue various instances of prosecutorial misconduct related to the State's closing argument. Specifically, the defendants assert the State misled the jury by discussing "secrecy" as an element of theft. They also allege the State improperly commented on Baxter and Spencer's election not to testify. Finally, the defendants claim the State wrongly commented on the defendants' guilt by highlighting the crimes charged, and not charged, in their indictments. On appeal, however, the defendants recognize they failed to raise any objections to the alleged misconduct at trial but request plain error review of the same. The State, in turn, argues the alleged prosecutorial misconduct does not warrant plain error review as "the defendants cannot show how these statements prejudiced the trial or rendered it fundamentally unfair." Upon our review, we agree with the State.

The defendants failed to object during the State's closing arguments at trial, thus it has been waived. *State v. Henretta*, 325 S.W.3d 112, 125 (Tenn. 2010) (citations omitted) ("Failure to object to a prosecutor's statements during closing argument results

in waiver on appeal."). Procedurally, we also note the defendants' consolidated brief fails because it does not contain any argument supporting their request for "plain error" review. As a result, the request is waived. Tenn. R. App. P. 27(a)(7)(A) (requiring an argument to set forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on").

However, despite the defendants' procedural waivers, we conclude they are not entitled to plain error review. In discussing plain error review, the Tennessee Supreme Court has held:

> This Court will not grant relief under plain error review unless five criteria are met: (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake; that is, the error was so significant that it probably changed the outcome of the trial. If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. The party claiming plain error has the burden of persuading the appellate court.

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citations and internal quotation marks omitted).

Here, the defendants have not, and cannot, show that any of the alleged misconduct was "so significant that it probably changed the outcome of the trial" because the record contains overwhelming evidence of the defendants' guilt. *Id.* At trial, Dean confessed to threatening Mr. Crawley while the three defendants stole watches and bracelets from Platinum Jewelers on October 25, 2012. Mr. Crawley testified he feared all three defendants during the robbery. The defendants then fled the scene, concealed stolen merchandise in their clothing, and hid from the police. Upon their arrests, Baxter and Spencer revealed stolen merchandise buried in their clothing. On appeal, the defendants admit they committed the theft of Platinum Jewelers, Dean threatened Mr. Crawley, and the threat occurred contemporaneously with the taking. The defendants, therefore, cannot show the alleged misconduct affected the outcome of the trial. *See id.* Accordingly, the defendants are not entitled to "plain error" review.

Further still, we disagree with the defendants' characterization of the prosecutor's alleged improper statements regarding the defendants' guilt and the elements of theft. The defendants assert the prosecutor improperly commented on the defendants' guilt by stating, "We don't charge people with crimes they did not commit." The defendants also assert the prosecutor misled the jury by discussing "secrecy" as a component of theft, "an element that is not supported by law." In our view, these statements were merely arguments made in response to the proof presented at trial. We believe the State's belabored arguments as to the offenses charged in the indictments and the definitions of theft were made in an effort to refute the defense theory that the defendants committed a theft, not a robbery. We do not see how either of the alleged improper statements served to mislead or prejudice the jury in light of the overwhelming evidence. Because the State was merely responding to the arguments made during trial, the defendants' allegations are without merit.

Finally, the defendants argue the prosecutor improperly commented on Baxter and Spencer's election not to testify by arguing "that the [d]efendants never told the detectives that they did not have anything to do with the commission of the alleged crimes." While it is misconduct for a prosecutor to comment on a defendant's decision not to testify, the record is absent of any proof of misconduct in this case. *Thompson v. State*, 958 S.W.2d 156, 168 (Tenn. Crim. App. 1997). Rather, we conclude the prosecutor's statement was merely a comment aimed at emphasizing the uncontradicted evidence presented at trial that after robbing Platinum Jewelers together, the three defendants fled and hid from the police together. This Court has previously held that these types of arguments "are not improper comments on the defendant's exercise of his right not to testify." *Id.* (quoting *State v. Blackmon*, 701 S.W.2d 228, 233 (Tenn. Crim. App. 1985)); *see also Schweizer v. State*, 399 S.W.2d 743, 748 (Tenn. 1966) ("Argument by [c]ounsel for the State to the fact that the evidence of the State is uncontradicted is not improper as drawing the attention of the jury to the failure of the defendant to testify."); *State v. Rice*, 638 S.W.2d 424, 427 (Tenn. Crim. App. 1982) ("Generally, mere argument by the state that its proof is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify."). Accordingly, we conclude the prosecutor's statements were not error and did not prejudice the outcome of the defendants' trial. The defendants are not entitled to any relief on this issue.

III. *Expert Testimony*

Finally, the defendants challenge the trial court's admission of Detective Green's expert testimony regarding the "21 foot rule." The defendants' argument is twofold. First, the defendants assert Detective Green's expert testimony regarding the "21-foot rule" is not relevant. However, relevancy did not form the basis of the defendants' objection at trial. Rather, the defendants' objection was based on lack of notice and

Detective Green's qualifications as an expert. On appeal, the defendants admit "there was no dispute at the time regarding relevance." Furthermore, the record reveals the defendants, during a jury-out hearing, affirmatively withdrew all objections to Detective Green's testimony. Accordingly, this issue has been waived. Tenn. R. App. P. 36 ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Finally, the defendants claim they were prejudiced by a lack of sufficient notice regarding Detective Green's expert testimony and ask this Court to interpret Rule 16 of the Tennessee Rules of Criminal Procedure as requiring pretrial notice of expert testimony. However, pretrial notice of expert testimony is not required by Rule 16. Tenn. R. Crim. P. 16. Additionally, the record makes clear that Detective Green's expert testimony was offered in response to the cross-examination of Mr. Crawley by the defendants. We have previously explained that Rule 16 "specifically limits discovery to scientific reports, tests and experiments 'intended for use by the State as evidence in chief.'" *State v. Aucoin*, 756 S.W.2d 705, 714 (Tenn. Crim. App. 1988) (citing *United States v. Wells*, 525 F.2d 974 (5th Cir. 1976); *United States v. Lambert*, 580 F.2d 740 (5th Cir. 1978)). Accordingly, the defendants were "not entitled to discovery of [Detective Green's expert testimony] when it was introduced in rebuttal." *Id.* This issue is without merit.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE